Hot Springs R. R. Co. v. Williamson.

---

# HOT SPRINGS R. R. CO. v. WILLIAMSON.

1. RAILROADS: *Obstructing access to private premises on streets: Damages.*
Under the Constitution of 1874, which provides that "private property shall not be taken, appropriated or *damaged* without just compensation," the owner of premises abutting upon a street in a city or town may recover from a railroad company the damages resulting to his premises by the construction of its road-bed or other structures, on its right of way along the street, in such manner as to obstruct access to the premises, though he have no interest in the fee of the street, and no part of his premises be taken, and the road or other structure be skilfully and properly built.

Hot Springs R. R. Co. v. Williamson.

APPEAL from *Garland* Circuit Court.
Hon. J. B. WOOD, Circuit Judge.

*J. M. Moore* for Appellant.

1. The injury, if any, was common to all the property in the vicinity, and not peculiar to plaintiff's. A private action cannot be maintained for a public nuisance. One who suffers in common with the public from an obstruction in a public highway cannot sustain a private action. *5 Allen, 223; 3 Id., 574; 4 Har. & M., 540; 28 Vt., 142; 36 Cal., 193; 1 Pa. St., 309.*

2. Where the fee of the streets is in the city, and it grants a right of way to a railroad to construct its road along such street, pursuant to an act of the legislature authorizing such use of the street, and the track is laid in a proper and skilful manner, the corporation is not liable for consequential damages to abutting lot owners. *56 Iowa, 735; 29 Id., 148; 44 Id., 11; 33 Mo., 128; Dillon Mun. Corps., Vol. II, Sec. 723, 3 ed., and Sec. 726; Cooley Const. Lim., pp. 554–5; 21 Ill., 516; 25 Id., 74; 79 Id., 269; 102 Ill., 64; 6 N. Y., 525; 25 Id., 526; 16 Id., 97; 27 Id., 188, 192; 50 N. Y., 206; 90 Id., 123; 4 Grey, Mass., 301; 113 Id., 58; 10 Allen, 591; 99 U. S., 635; 94 U. S., 336; 26 Ark., 276; 55 Pa. St., 340; 18 Id., 189; 25 Vt., 49; 28 Id., 142; 25 Id., 465.*

The constitutions of some of the states, like ours, provide that property shall not be taken or *damaged* for public use without compensation, etc. These provisions have been held to have the same effect as the *Railway Clauses Consolidation Act of Parliament*, and the courts in construing their effect in enlarging the rights of land owners to compensation for consequential damages, have almost universally followed the English courts. See *2 Law Rep. E. & I. Ap. Cas., 186, 198, Rickets' case; 2 Law Rep. C. P., 643; 68 Ill., 394; 102 Ill., 64.* It will be seen that railroads are liable only for such *direct* and *phys-*

*ical* damage as results from the construction of the road or its operation.

3. The company is not liable for any injury resulting from the works constructed on the right of way granted by congress. The right of way did not constitute a part of Benton street, and the public had no right therein; but if it did constitute a part of the street, the turn-table being necessary to the operation of the road, was properly constructed there, etc., etc. *19 U. S. St. at large, 377, Secs. 17 and 18, and 21 Id., p. 288, Sec. 6; Acts 1883, Ark., p. ———.* The seventeenth section was a pres-·ent grant of the right of way, and vested at once. *103 U. S., 428.* It carried with it the exclusive right to the use and possession of the strip of land designated, for the purpose contemplated, to the same extent as if it had been a grant in fee, and the company had the right to erect thereon all structures necessary to the operation of the road. *Mills Em. Dom., Secs. 208, 209; 6 Bess., 158; 25 Vt., 150; 16 Ill., 198; 4 N. Y., 349; 4 Metc., Mass., 564; 10 Cush., 6; 7 Allen, Mass., 523; 2 Dillon Mun. Corp., Sec. 727; Pierce on Am. R. R. Law, pp. 159–60, 421.*

There is no qualification or restriction in the grant, and the commissioners could not by any act of theirs impair or affect it. *103 U. S., 428; 111 U. S., 276.*

4. As to measure of damages, see *35 Ark., 622.*

*R. G. Davies* for Appellee.

The property was shown to have been badly damaged by the embankment and other works, consequent upon the occupation of the street by the railroad.

If the council could have granted the right to construct a railroad over the additional portion of the street beyond the right of way granted by congress, which it is submitted it could not have done without special authority from the legislature,

which at the time it did not have, *Angell on Highways, 2 ed.,
Secs. 33–4; Dillon Mun. Corp., 3 ed., Secs. 701 (555), 703
(557), 705 (558)*, there cannot possibly be any excuse for the
building a stone wall and embankment or other permanent
structures in the street. *Mills Em. Dom., Sec. 200; Redfield
on R. R., p. 250; 5 Cent. Law Jour., p. 385.*

The damages are the same whether the title to the street is
in the lot owners or in the city. *14 Federal Rep., 394.* The
measure of damages is the diminution of the value of the prop-
erty, and may include prospective, as well as past, damages.
*10 Bush., 382; 19 Am. Rep., 67.*

When the grade is changed or access obstructed, or when
the injury results from the manner of laying the track, the in-
jury is permanent and the owner may recover the depreciation
in value of the property, even though the company was licensed
to occupy the street. *23 Kan., 585; 33 Am. Rep., 203.*

The act of March 1, 1883, (*Acts 1883, p. 69,*) has no appli-
cation. At the time of the injury cities had no power to license
railroads to occupy streets. *Dillon Mun. Corp., supra; Angell
Highways, supra; Acts 1874, p. 9, Sec. 14.*

The owner of the adjoining lots owned the fee in the street,
at the time the embankment was made. See maps. *2 Smith's
Lead. Cas., 229 et seq; Acts Congress, Supplement, pp. 290–1.*
These show clearly the intention to grant the fee to the owners
of the lots, and the streets are finally *ceded* to the city for
*public use*, but even where the lot owner does not own the fee
to the street, he can recover for any mismanagement amounting
to a nuisance. *38 Mich., p. 62; 31 Am. Rep., 30.*

As to measure of damages, see *39 Ark., 167.*

Appellee does not sue for an injury which she personally
suffers *in common with the public* on account of obstruction to
travel, but one which she suffers from diminution in the value
of her property, which the public is not concerned in. She
only is interested in that.

COCKRILL, C. J.   Congress granted a right of way to the Hot Springs Railroad Company by act of March 3, 1877, through the Hot Springs reservation.   The road was located and built through the city of Hot Springs, along the line of Benton street, the right of way occupying one hundred feet on the south side of it.   This right of way lacked 130 feet of extending to the intersection of Malvern avenue, which is the western terminus of Benton street.   On June 16, 1880, the United States, through congress, ceded to the city of Hot Springs the streets and other thoroughfares of the city, for public use, and thereafter the city by an appropriate ordinance granted the railroad company a right of way from its western terminus through Benton street to the intersection of Malvern avenue. The company extended its road-bed upon this additional right of way, making for that purpose an embankment in the street, fifty feet wide and from three to four feet above the grade of the street, the center thereof being in a direct line with the center of the congressional right of way.   The sides of the embankment are of masonry, presenting solid granite walls, and preventing any use whatever by the public of so much of the street as is occupied by it.

The appellee is the owner of the premises on the two corners, next to the railroad, of Benton street and Malvern avenue. The lots on the north side of the street, front —— feet on Malvern avenue and — feet on Benton street, the others 105 feet on Benton street and fifty-four feet on Malvern avenue. The embankment occupies a space between the two pieces of property, leaving twenty-five feet of open street between it and the premises on the south side of the street and sixty-five feet between it and the premises on the north side.   The proof showed that the extension of the road-bed was elevated above the grade of the street in order to bring the new tracks upon a level with the old ; that the south side of the street, just east of

27——45

the appellee's premises on that side, was blockaded by the appellant's turn-table placed within its congressional right of way, so that the embankment not only narrowed the street next to these premises, but also made it necessary for the appellee to take a circuitous route around the west end of it, in order to gain access to her premises on the south side of the street when approaching from the east, and that these facts depreciated the value of the premises on both sides of the street. The appellee sued the company for this injury and recovered judgment for $2275.

The company requested the court to instruct the jury as follows, viz:

RAILROADS:— Obstructing access to private premises.

"The streets and alleys were ceded by congress to the city of Hot Springs for the use of the public, and if the city with the sanction of the legislature, grants a railroad company the right to construct and operate its road thereon, such company will not be liable to an abutting owner for consequential damages, unless it results from the negligent and improper construction of the road. It is not alleged in this case that the defendant's road is negligently or improperly constructed. Therefore, if you find that the city of Hot Springs, by one or more ordinances adopted prior to the 1st day of March, 1883, granted defendant the right of way upon Benton street, between plaintiff's lots, and that the embankment and other structures complained of, or any of them, are located thereon, you will not find for the plaintiff by reason of damages caused to their lots by said embankment and such improvements."

The court refused this, and charged the jury that the appellee was entitled to recover the amount her property was diminished in value if the facts were found as stated. The counsel for the appellant submits that this action of the court raises this question: "Where the fee of the streets is in the city, and it grants a right of way to a railroad company to construct its road along a street, pursuant to an act of the legisla-

ture authorizing such use of the street, and the track is laid in a proper and skilful manner, is the corporation liable for consequential damages to abutting lot owners?"

The cases sustaining the position assumed by the appellant have arisen mainly under the familiar constitutional restriction that private property shall not be taken for public use without compensation; and the decisions have generally turned upon what is a taking of property within the meaning of this provision. When the title of an owner of real estate, abutting upon a street which is appropriated in whole or in part by a railroad, extends to the center of the street, the cases concur in sustaining his right to recover not only for the fee in the street, which is actually taken, but also for the consequential damages done his abutting premises. But when the fee to the street is in the public, and the legislature, having no other restraint laid upon it, has sanctioned its use by a railroad, the weight of authority is that the abutting owner of real estate can recover nothing unless the *corpus* of his premises is actually invaded in some way. In other words, if an inconsiderable part of his estate is taken the owner may recover the incidental damage done to the whole; but he can recover nothing, even though the incidental damage to his estate be equally great, if nothing is taken. When this rule was promulgated the kind of consequential injuries here complained of had, perhaps, no existence. Now, the consequential injury may amount to an absolute destruction of value, and to make the right of recovery dependent upon the ownership of the fee in a street, in which the owner's practical interest at last is only that of a servitude, is to make a difference with only a narrow legal distinction to back it. Many judges, while adhering to the rule, have condemned the practical injustice of it, and have commended a change to the law-making power.

Our Constitution, adopted in the light of the injustice that may result from an enforcement of the rule, has placed an ad-

ditional limitation upon the right of eminent domain.   The bill
of rights does not stop at a simple prohibition against the taking
of private property for public use without compensation.   To
this guaranty, which was found in the Constitution of 1868, the
framers of the Constitution of 1874 added another, to wit: that
private property shall not be *damaged* for public use without
compensation, and now the fundamental law is, "private prop-
erty shall not be taken, appropriated or *damaged*, for public use
without just compensation."   Under this enlarged provision,
our inquiry is no longer limited to the question, has private
property been taken for public use, and it is useless to recur to
cases which are confined to the interpretation of a clause con-
taining that limitation only.   A provision similar to that in our
Constitution is found in the constitutions of Illinois, Colorado,
Georgia, Nebraska, California, West Virginia and Pennsylvania,
and in each of these states it has been held by the courts of
last resort that this addition to the old provision against taking
private property without compensation was intended to afford
redress where none could be had before.   *Pusey v. City of Al-
legheny, 98 Pa. St., 522; City of Reading v. Althouse, 93 Ib.,
400; Reardon v. San Francisco, 7  A. & E. Cor. Cases, 454;
Harman v. Omaha, Ib., 474; Gottschalk v. R. R., 14
Nebraska, 550; R. R. v. Fellers, 16 Ib., 169; Rigney v.
Chicago, 102 Ill., 64; Atlanta v. Green, 67 Ga., 386;
Denver v. Boyer, Col,, 23 Am. Law Reg., 440; Molandin v. M.
P. R'y, 14 Fed. Rep., 394; Johnson v. Parkersburg, 16 W. Va.,
402; Hutchinson v. Parkersburg, 25 Ib., 226; Transportation Co.
v. Chicago, 99 U. S., 635.*

An examination of the cases will show that it may now be
taken as settled that where this provision prevails it is no longer
necessary that there should be a physical invasion or spoliation
of one's lands in order to give a right of recovery.   As was said
in *Reardon v. San Francisco, sup.,* "It will occur to any one re-
flecting on the import of the clause that if it was not an

Hot Springs R. R. Co. v. Williamson.

additional guaranty to the usual one, its insertion was idle and unmeaning." The decisions are not in accord, however, as to the extent of the injury for which the right of action is given.

In England, the railway clauses consolidation acts recognize a right of action in persons whose property has been "injuriously affected" by the building of a railroad. Under these acts the British judges have usually held that no injuries were actionable except those for which the common law would have afforded a remedy, if the act causing the injury had not been authorized by parliament. The supreme court of Illinois place a like construction upon the provision of their constitution. Other courts have ruled that the redress intended by a similar provision is not restricted to cases which are actionable as at common law. *Cases, sup.*

The determination of this appeal does not render it necessary for us to enter upon the consideration of this question, because, if we conclude to say, with the Illinois and English courts, interpreting words similar in meaning to those in our constitution, that such language recognizes a right to recover only where it would have existed at common law; or, if we interpret the provision as recognizing a new right of action, as some of the state courts have done, the appellee, in either event, is entitled to compensation. An examination of a few of the decisions adopting the more restrictive interpretations of this provision will be sufficient to show this.

The effect of this provision of the constitution was before the supreme court of Illinois repeatedly prior to the case of *Rigney v. Chicago, 102 Ill., 64.* In that case the court reviews its former rulings and attempts to settle the question definitely. It is said: "Under the constitution of 1848, it was essential to a right of recovery, as we have already seen, that there should be a direct physical injury to the *corpus* or subject of the property, such as overflowing it, casting sparks or cinders upon it, and the like; but under the present constitution it is sufficient

if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage, in excess of that sustained by the public generally, which, by the common law would, in the absence of any constitutional or statutory provisions, give a right of action." Again, at page 80:

" The question then recurs, what additional class of cases did the framers of the new constitution intend to provide for which are not embraced in the old? While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns and cities which directly impair the value of private property, for which the law does not, and never has, afforded any relief.

. . . . . . . . . . . . . . . . . . . . . .

" So, as to an obstruction in a public street, if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

In the last Illinois case on the subject, the court, following *Rigney v. Chicago,* sustained a recovery for consequential damages against a railroad, upon facts similar to, but not as strong for the plaintiff as, those in this case. *C. & W. I. R'y v. Ayers, 106 Ill., 511.* The result was the same as in the *Nebraska* cases, *sup.; Denver v. Boyer* and *Molondrin v. R'y, sup.*

The English cases have recently undergone an exhaustive review in the house of lords, in the case of the *Caledonia R'y v. Walker's trustees,* reported in *35 Moak, 177.* Opinions were delivered by several of the lords, in which they do not quite agree as to the import of former decisions, but all concur in the opinion that where access to private property is interfered with by the construction of a railroad, and the value of the property, irrespective of any particular use which may be made of it, is so dependent upon the existence of that access as to be substantially diminished by the obstruction, the owner is entitled to compensation.

In that case the claimant's property was not situated on the street that was obstructed, and this fact would tend to render the case less formidable for a recovery than the case at bar, but the claimants were permitted to recover, Lord Selbourne saying a recovery was sustained in *Beckett's case, (Law Rep. 3 C. P., 82,* approved in *McCarty's case, Law Rep. 7 H. L., 243),* because "the width of the public road, immediately opposite the plaintiff's premises, was reduced so as to render it, not useless to those premises for the purpose of access, but less convenient than before. In *McCarty's case,*" he continues, "this house gave compensation for the obstruction of access to the river Thames, from the plaintiff's premises through a public dock, lying on the other side of a public road, adjoining those premises. It was argued for the appellants that these authorities ought not to be extended to any case of the obstruction of access to private property by a public road, when such obstruction is not immediately *ex adverso* the property.

This limitation, however, seems to me arbitrary and unreasonable, and not warranted by the facts, either of *Chamberlain's case, 2 B. & S., 617*, or of *McCarty's case;*" and it was held sufficient for a recovery if the right of access was proximate and not remote or indefinite. In the same case, Lord O'Hagan says of the *McCarty case*: "In that case, as in this, there was a public way, and in that, as in this, access to it was obstructed by the works complained of. There, as here, the obstruction produced inconvenience to the general public, who had the use of the way, but there, as here, there was an additional and appreciable damage to the premises of an individual, rendering them less available for his purposes, and, therefore, diminishing their value. There the premises were pronounced to have been 'injuriously affected,' and the proprietor to have suffered damage to his estate, although no land was taken from him, and although no land of his was touched; the physical obstruction of access being deemed in itself an injury to the premises, which it damnified within the meaning of the compensation clauses."

In *Widder v. Buffalo R'y, 29 Up. Can., 2 B., 154*, the court says: "The plaintiff's land has a frontage on the river Maitland, which appears to be a public, navigable river. To this river the plaintiff had access from his land. The defendants have excluded him from access to it, except by the inconvenient method of crossing their railway embankment. . . . This I have no doubt is injuriously affecting the land of the plaintiff, the same as if plaintiff had been cut off by an embankment from the public highway. . . . In every case which has been cited, or which is referred to in those cited, it is stated, as unquestioned in law, that when there has been an act done, making the land of the claimant 'inaccessible by raising the ground immediately in front of it,' referred to by Lord Cranworth in *Rickett's case, 2 H. L., 175*, or 'by the right of access to or from the highway being taken away,' per Boville, C. J.,

in *Rickett's case, sup.*, the claimant is entitled to compensation; and many other passages might be cited to the same effect."

This is sufficient to show the certain drift of the authorities. In every instance it is said the recovery can be had only where the owner has sustained a special injury to his land—a damage not common to the public. It is not sufficient to defeat the right, however, that a large number of persons suffered special damage. If so, it would only be necessary for the company, when an injury has been inflicted upon one for which damage should be awarded, to inflict a like injury on many others in order to escape liability. No individual can recover for the general public inconvenience. But all the cases agree that this special damage is done by the erection of an embankment in the street *ex adverso* the owner's premises. See *Mills Em. Dom., Secs. 206–7.*

That was the gist of the complaint in this action, and the point of inquiry to which the proof was directed. The preponderance of the testimony showed that the embankment was a direct and special injury to the appellee's property, and this is apparent from the statement of the facts. The injury from the embankment was increased by the fact that all access to the appellee's premises was excluded to persons approaching from the east on Benton street, by reason of the turn-table.

The refusal of the court to charge the jury, in effect, that the appellant was not liable for any injury resulting from the works constructed on the right of way granted by congress, is assigned as error.

It was claimed by the appellee that the turn-table of the appellant, which was located in part upon the right of way, and in part upon a lot owned by the appellant, wholly obstructed Benton street at the east end of her lot, on the south side of the street. No claim for damages was made by reason

of the construction of a road-bed and track upon the congressional right of way, but only for this obstruction.

It is contended that the right of way did not constitute a part of Benton street, and that the public had no rights therein, but that the railroad company has the exclusive right to the use and enjoyment of the entire width of the right of way.

This question involves the construction of the act of congress of March 3, 1877, which is the appellant's grant of right of way. The act has relation to the Hot Springs reservation. The title to this property had recently been adjudged to be in the United States. For more than half a century it had been claimed by individuals, under the belief that the government had parted with its title. A prosperous town had grown up upon it, with all of the incidents of business and social interests. Congress, in the act aforesaid, undertook to mitigate the hardships that would naturally follow a strict enforcement of the government's legal rights. It gave the claimants of the property a pre-emption right to the land occupied by them. It recognized the existence and location of the city of Hot Springs, of its streets, alleys and thoroughfares. It empowered the commissioners, whose office was created by the act, among other things, to straighten or widen existing streets, and to lay off and open such additional streets as the convenience of the public and the interest of the government might require. The appellant's rights are then granted and defined. The 17th Section is as follows:

"That the right of way be, and it is hereby, granted to the Hot Springs Railroad Company; a company duly incorporated and organized under the laws of the State of Arkansas, to construct, maintain and operate its line of railroad upon, over and across the Hot Springs reservation, in the State of Arkansas, as follows."

Data and points are then given for locating the right of way through the reservation and into the city; and Section 18 fixes its width at 100 feet.

This is all there is in relation to the right of way. A proviso was added, to the effect that the railroad might purchase land, not to exceed 20 acres, for shops, depots and other purposes, on the same terms as individuals.

It is a conceded fact in this case, that Benton street was one of the original streets of the town of Hot Springs, and was still used as such at the time of the passage of the act. It was then only 80 feet wide, and the entire space of the old street is now covered by the railroad right of way, leaving an open street of 40 feet north of the right of way. This results from the fact that the commissioners increased the width of the street to 140 feet. This fact is apparent from the official map, made in pursuance of the act of congress, a copy of which accompanies the bill of exceptions. Lots and blocks are laid out on each side, as upon other streets, with 140 feet intervening between them, with no means of egress other than through this street; and the street had an unobstructed width of 140 feet from its western terminus to the appellant's congressional right of way, before the railroad, by treaty with the city, extended its track over it.

This view was also entertained by the company, for it procured the passage of an ordinance by the city and entered into a contract with the city authorities to gain the privilege of erecting its depot and turn-table in the street within the limits of the right of way granted by congress.

There is nothing in the record to sustain the appellant's contention that it was the intention of the commissioners to abandon any part of the street.

Whether congress fixed the right of way, by such data that any competent engineer would have located it without varia-

tion from the line finally adopted, the proof does not disclose, but we are informed that the location was approved by the Hot Springs commissioners. It was not one of the duties of the commissioners, under the act, to locate the right of way, but we are not apprised of any legal objection that can be urged to the location. We have then this result: The act recognizes the usual rights of the public in the streets of Hot Springs, as finally laid out by the commissioners, and at the same time grants the railroad a right of way through one of these streets.

It is the duty of the courts to construe the several provisions of the act together, without annulling any of its parts, if this can be done consistently.

We see no difficulty in giving effect to the several parts of the act pointed out, and harmonizing the rights of the land owners and the railroad in the street. There is nothing in the act to indicate an intention on the part of congress to invest the railroad with an absolute title to any part of the strip of land upon which its road was to be located. It was simply a grant of a right of way, and this carried with it only the right to " construct, maintain and operate its line of railroad," on the strip of land indicated.

But the appellant contends that it has the right to appropriate the right of way as a location for its turntables, depots, or for any other purpose necessary to the operation of its road. This may be true when the exercise of the privilege does not conflict with the rights of others. The occupants, claimants and purchasers of lots on Benton street, however, had the right, co-ordinate in time and authority, to expect and demand the use and enjoyment of the street as such, subject always to the restraint laid upon it by the act itself, of permitting the company to build and operate its road upon it. But an exclusive right in the company in any part of

it would be inconsistent with the land owners' privilege of user.

Benton street necessarily intersects many other streets, and if the company's position were once admitted, what would prevent it from blockading any and all cross streets, at their intersection with Benton, with their depots, warehouses, turntables, etc., and thus substantially deprive the two parts of the town of the means of intercommunication?

To the extent that the legitimate use of the street, as a right of way proper, does not prevent the use and enjoyment of it as a public highway, the adjacent property owners and the public in general have a right to use it as such. The rights of the railroad in this respect are no greater than if the right of way had been conferred by the city, under legislative authority for that purpose, and the only authority the company has shown for maintaining the turn-table complained of is the city ordinance.

We have treated the case as though the legislature had empowered the city to authorize the use of the street, as the company has used it, without compensation to the owner; and without reference to the fact that the embankment might have been constructed with more convenient access to the public.

At the time the ordinance, under which appellants claim, was passed, there was no legislative authority for it. After the appellee's suit was instituted, the legislature, by general act, ratified the action of the city, and we have been content to treat the act of the legislature as the appellant's counsel has done, as validating the city's action *ab initio.* The consent of the city to the use of the street, however, cannot impair the appellee's right to compensation, for, as we have seen, it is a right secured to him by the Constitution.

Finding no error, the judgment is affirmed.