77    387
79    126

LITTLE ROCK & FORT SMITH RAILWAY COMPANY v. GREER.

Opinion delivered January 6, 1906.

1. RAILROAD—LIABILITY FOR OBSTRUCTION OF STREET.—The owner of premises abutting upon a street in a city or town may recover from a railroad company the damages resulting to his premises by the construction of its roadbed or other structures on its right of way along the street in such manner as to obstruct access to the premises, though he have no interest in the fee in the street, and no part of his premises be taken, and the road or other structure be skillfully built. (Page 392.)

2. SAME—OBSTRUCTION OF STREET—ACCRUAL OF ACTION.—While, in case of land taken for railroad purposes, a right of action accrued in favor of the person who owned the land at the time of its taking to recover compensation for all damages, present and prospective, which he sustained by reason of the construction of the railroad, a right of action in favor of an adjacent landowner to recover damage caused to his land by raising the roadbed of a railroad so high as to obstruct access thereto accrues when the damage is done, and to the person owning the land at the time of the obstruction which caused the damage. (Page 394.)

3. OBSTRUCTION OF STREET—RIGHT TO RECOVER DAMAGES.—To warrant a recovery where property is damaged, but not taken, by an obstruction in a street, it must appear that there is some physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives it additional value, and that by

reason of such obstruction he has sustained a special damage with respect to his property in excess of that sustained by the public generally. (Page 395.)

4. EMINENT DOMAIN—RIGHT OF WAY—PRESCRIPTION.—Where a railroad company acquires a right of way by prescription merely, its title is limited in extent to the land actually taken. (Page 397.)

5. STREET—TITLE.—A conveyance of a lot in a block passes the title to the center of a street on which it abuts, subject to the public easement. (Page 397.)

6. RAILROAD—ADDITIONAL OBSTRUCTION—LIABILITY.—The fact that a railroad company occupied a part of the abutting street before plaintiff acquired his lot would not deprive him of the right to recover the damages caused by an additional obstruction by raising the roadbed higher. (Page 397.)

Appeal from Conway Circuit Court; WILLIAM L. MOOSE, Judge; affirmed.

Robert L. Greer sued the Little Rock & Ft. Smith Railway Company, alleging that he owned a dwelling house situated on Railroad Avenue, in the city of Morrilton; that defendant filled in its roadbed opposite plaintiff's premises, obstructing the public street, so as to prevent plaintiff and the public from the free use and enjoyment thereof in front of plaintiff's residence. The prayer was for $500 damages. There was an agreed statement of facts which recited the following facts:

"The plaintiff, R. L. Greer, is the owner of a certain lot or tract of land fronting and abutting upon Railroad Avenue, one of the principal streets in the city of Morrilton. The property is about 70 feet front and about 365 feet back. The plaintiff acquired title to the same by deed of conveyance from M. D. Shelby on the 22d day of April, 1896. He entered into possession of the same, and improved it by remodeling a certain house then standing upon it, and fixed his residence and began to reside upon and does now reside upon the same. Prior to the time the plaintiff acquired his property in the premises, and prior to the time when the defendant constructed its line of road along and near to said premises, there was a public highway established and maintained along the north side of what was appropriated by defendant. The city of Morrilton, after the construction of said railroad, was laid out and built up along both sides of said railroad for a distance of about one mile. Within this distance of

one mile is situated the premises of the plaintiff, but said premises were not regularly laid out and platted as any portion of said town of Morrilton.  The said public highway afterward became known and recognized as the said Railroad Avenue above referred to.  The said Railroad Avenue has been, since time prior to the construction of said railroad, continuously used as a public highway and as Railroad Avenue.  *  *  *  The defendant's road was constructed along said highway in the year 1871.  *  *  *  The said defendant company originally constructed its road along the south side of the old public highway, now known as Railroad Avenue, practically on the surface level, just opposite the plaintiff's property there being a slight cut, and continued to maintain and operate its said road along said line, claiming a right of way of 49½ feet on each side from the center of the same.  *  *  *  Along in front of plaintiff's premises, the ground was practically level out to where the defendant's cut began, which was 6½ feet from the end of the ties.  In the early spring of 1902, the defendant railroad company elevated its grade line at the point in controversy to a height of 11 feet.  In the elevation of the grade line, it constructed an embankment or dump upon which to operate its road.  The said dump, at its top, is about 24 feet wide, that is to say, 12 feet wide on either side of the center line of the track. The base of said dump on the north side, and next to the plaintiff's premises, is 26 feet wide, measured from a perpendicular line dropped from the center of the track.  There is yet between the base of said dump and the sidewalk in front of plaintiff's premises a space of 18 feet, along which space the public highway, Railroad Avenue, now runs.  Immediately next to plaintiff's premises there is now a sidewalk of six feet wide. The plaintiff's house is set back from the north of said sidewalk a distance of 28½ feet to the front porch.  It is 14 inches high from the ground, which is practically on a level with the said street.  The residence portion of the city of Morrilton is practically divided by the railroad at the point in controversy.  Before the construction of the embankment above mentioned, the railroad could be crossed by pedestrians at any point opposite the plaintiff's dwelling.  It can now be crossed only by climbing over the said embankment, which rises at an angle of 45 degrees, or else by

going 240 yards along said highway to the west, at which point the railroad company has constructed an underground crossing for persons, animals and teams. This is in an opposite direction from the business portion of the town, and just outside the corporate line, a distance of 20 or 30 feet. Persons crossing at the underground crossing mentioned are compelled to cross the property of an oil mill, located on the south side of the railroad, near said underground crossing, and go a distance of 750 feet to Church Street in order to turn back east one block toward the business portion of town, and to turn north in order to reach the dwellings on the south side of the railroad opposite plaintiff's property. Before the construction of the present embankment, there had been maintained for a long number of years a .public crossing over defendant's railroad at a point 180 feet east of plaintiff's property. Said crossing has been closed by the construction of said embankment, and has not since been opened. Since the construction of said embankment it is impracticable to cross the same with vehicles of any kind: The nearest open crossing at this time at which the railroad may be crossed east of Greer's property, and toward the business part of the city, is 400 yards.

"It is agreed that the directors of the Little Rock & Fort Smith Railway, having decided that it was impracticable to operate its line of road and promptly move the traffic offered to it for shipment, on its present degree of curvature, and on its established maximum grade line, in April, 1902, passed at their annual meeting in the city of Little Rock, Arkansas, a resolution authorizing the re-establishment of its line of road on the same and different alignment and on a maximum of six-tenths of one per cent, grade line; that in pursuance to this resolution the large embankment in front of plaintiff's premises was constructed; that, in the exercise of the highest degree of care and skill in engineering, this large embankment was necessary to the perfect construction of defendant's line of road on the newly established maximum grade line; that said embankment was constructed after the most approved modern method, in the most skillful manner possible.

"For a number of years the defendant has been unable to move promptly the vast amount of freight offered to it for shipment for interstate points and locally. When defendant's line

of road has been constructed according to the present plans adopted by its engineering department, each engine and crew of train hands will be able to move approximately sixty per cent. more of freight than such engine and crew has been able to move over the old line, operated with the most consummate skill. In the construction of the embankment in front of plaintiff's premises, defendant did not interfere with or injure physically the premises of the plaintiff. The public highway still exists along the base of said embankment and in front of plaintiff's premises, and wagons and vehicles of standard width are able to travel along and pass each other on said highway at any point. Whatever right of way defendant owns in front of plaintiff's premises, it owned long before plaintiff bought said property or improved the same. Cherokee Street railway crossing, which was closed by the obstruction of said embankment, is within the city limits of Morrilton, and the city authorities have taken no steps to re-establish said crossing, save to attempt to compel the railway company to open again the same. When the defendant's plans for the reconstruction of its road have been fully carried out, it will only be necessary for defendant to operate about half as many trains as at present, and the defendant will reduce fully fifty per cent. the chances of injuries to persons and property by the movement of trains."

The case was tried before the court sitting as a jury. Defendant moved the court to render judgment in its favor on the agreed statement of facts, but the motion was overruled. The court found for the plaintiff, assessing his damages at $250. Defendant appealed.

*Oscar L. Miles,* for appellant.

When a line of road has been located and constructed, the maintenance of the line of road upon the original location, or upon another, is exclusively within the discretion of the directors. Kirby's Digest, § § 6570, 6571. The company acquired with its right of way the indefeasable right to do all things necessary to promote the skillful maintenance and operation of its road. 35 Ark. 540; 53 Pa. St. 229. It acquired exclusive right of possession of the right of way. Elliott on Railroads, § 987. A subsequent purchaser takes subject to the burden of the railroad; and

the right of payment if the entry was by agreement, or to damages if it was unauthorized, belongs to the owner at the time the company took possession.   3 Am. & Eng. R. Cases (N. S.), 106; 77 Pa. St. 335; 2 Watts, 343; 2 Wood on Railroads, 994; 54 Ga. 293; 107 Ga. 838; 33 S. E. 669; 158 U. S. 1; 72 Ill. 155; 39 Ill. 205; 77 Ill. 275.

*Reid & Strait,* for appellee.

Private property shall not be taken, appropriated or *damaged* for public use· without just compensation.   Const. 1874.   The construction of the embankment caused special damage to plaintiff's property, for which he may recover.   45 Ark. 429; Elliott on Roads and Streets, 528; 11 L. R. A. 634 and notes; 23 L. R. A. 674; 51 L. R. A. 319, note.

Wood, J.   The Constitution provides that:   "Private property shall not be taken, appropriated or *damaged* for public use without just compensation therefor."   Const. 1874, art. 2, § 22. In *Hot Springs R. Co.* v. *Williamson,* 45 Ark. 429, it was contended that "where the fee of the streets is in the city, and it grants a right of way to a railroad company to construct its road along a street, pursuant to an act of the Legislature authorizing such use of the street, and the track is laid in a proper and skillful manner," the railroad company is not liable to abutting lot owners for consequential damages.   In disposing of that question this court held (quoting syllabus) :   "The owner of premises abutting upon a street in a city or town may recover from a railroad company the damages resulting to his premises by the construction of its roadbed or other structures on its right of way along the street in such manner as to obstruct access to the premises, though he have no interest in the fee of the street, and no part of his premises be taken and the road or other structure be skillfully built."   That case rules this, and the learned and exhaustive opinion of Chief Justice Cockrill has left nothing more for us to say upon the question.   But counsel for appellant, while conceding that the doctrine of that case "is perfectly sound," yet says:   "It can have no application to the facts in this case," for, says he, "in the case at bar the railway company is not occupying a public highway.   The public highway yet remains intact.   In the case at bar the plaintiff owns no fee in any part of the ground occupied

by the dump of the railway, nor has he any property interest whatever in any portion of the company's right of way; and in the case at bar it must be clearly understood, and all the time remembered, that the railway company not only had acquired its right of way, but had constructed its line of road upon that right of way twenty-five years before the plaintiff had acquired title to the property for which he now seeks to recover damages."

A glance at the facts of the two cases will show that in the essential particulars upon which the doctrine in the Williamson case was announced there is no difference between that case and this. Learned counsel for appellant mistakes the facts and the law when he says that in the Williamson case Williamson was the owner in fee of the soil to the center of the street upon which he owned lots abutting. The Act of Congress of March 3, 1877, only gave to the claimants of the lands of the United States government at Hot Springs a pre-emption right to *the land occupied* by them. The fee in the streets never passed to individual claimants. It was expressly reserved in the Government for the use of the public at Hot Springs. See Williamson case, *supra.*

The decision in *Hot Springs R. Co.* v. *Williamson, supra,* upon the question now under consideration was bottomed upon the fact that Williamson was not the owner of the fee in the soil when the railroad company secured its right of way and built its road over it. Judge COCKRILL says: "Now, the fundamental law is, 'private property shall not be taken, appropriated or *damaged* for public use without just compensation.' Under this enlarged provision, our inquiry is no longer limited to the question, *has private property been taken for public use?* and it is useless to recur to cases which are confined to the interpretation of a clause containing that limitation only. A provision similar to that in our Constitution is found in the constitutions of Illinois, Colorado, Georgia, Nebraska, California, West Virginia and Pennsylvania, and in each of these States it has been held by the courts of last resort that this addition to the old provision against taking private property without compensation *was intended to afford redress where none could be had before;*" citing many cases. And continuing: "An examination of the cases will show that it may now be taken as settled that where this provision prevails it is no longer necessary that there should be a physical invasion or

spoliation of one's land in order to give a right of recovery." Had Williamson been the owner of the fee in the land taken, this language would have been inappropriate. Moreover, the cases cited in the opinion show clearly that the ruling was based upon the idea that Williamson was not the owner of the land taken, yet, as he was the owner, at the time the railroad was built, of land that had been injured by its construction, he was allowed to recover. Some of the strongest cases cited were those where the land damaged was not even situated on the street or highway taken for railroad purposes.

Counsel for appellant invokes the well-settled doctrine "that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such land, a subsequent vendee of the latter takes the land subject to the burden of the railroad; and the right of payment from the railroad company if it entered by virtue of an agreement to pay, or to damages if the entry was unauthorized, belongs to the owner at the time the railroad company took possession;" and he cites *Roberts* v. *Railroad Co.,* 158 U. S. 1; *McFadden* v. *Johnson,* 72 Penn. St. 335; *Schuylkill & S. Navigation Co.* v. *Decker,* 2 Watts, 343; 2 Wood, Railroads, 994; *McLendon* v. *Atlanta & W. P. R. Co.,* 54 Ga. 293; *Allen* v. *Railroad Co.,* 107 Ga. 838; *Toledo Ry. Co.* v. *Morgan,* 72 Ill 155; *Ill. Central R. Co.* v. *Allen,* 39 Ill. 205; *Indianapolis, Bloomington & Western Ry. Co.* v. *McLaughlin,* 77 Ill. 275.

We have examined these authorities, and find that the doctrine is applied only in cases where there has been a taking of the property—where the *corpus* of the property was invaded and suffered some physical injury.

It is a well-established rule of law that the owner of land taken for railroad purposes is entitled, before or at the time of the taking, to compensation for all damages, present and prospective, which he sustains by reason of the construction of the railroad. Const. art. 2, § 22; Kirby's Digest, § 2899. Such damages include the value of that part of the land which is taken, as well as the damages consequent upon such taking to the residue. The doctrine invoked by appellant has its rationale in the presumption that, in the absence of proof to the contrary, the owner who is

entitled to such compensation received same before or at the time his land was charged with the servitude; that this was considered and settled when the owner conveyed the land to the railroad or when the railroad acquired its title by condemnation; or that the owner was barred from claiming such compensation where the railroad had acquired title by prescription.    23 Am. & Eng. Enc. Law, 714.

For obvious reasons the doctrine urged could not apply to one whose property had never been taken, and who was not therefore entitled to set up a claim for damages as one whose property had been taken.    By limiting the right to recover for damages to those whose property *had been taken* under the old rule prior to the adoption of the Constitution of 1874, great injustice and inequality often arose.    As is shown by Judge COCKRILL in *Hot Springs R. Co.* v. *Williamson, supra,* it was to obviate this that the constitutional provision was broadened so as to give compensation to the one whose property was *damaged* (although not taken) for public use, as well as to the one whose property was taken.    It is under this provision, as construed by this court in *Hot Springs R. Co.* v. *Williamson, supra,* that appellee seeks and is entitled to recover.    Under this provision the cause of action accrues when the damage is done, and accrues to the one who is the owner of the land at the time of the construction which causes the injury or damage.

As shown in one of the citations from *Hot Springs R. Co.* v. *Williamson,* to warrant a recovery in all cases where the property is damaged, but not taken, by the obstruction in a street, it must appear that there is some "physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally."    *Rigney* v. *Chicago,* 102 Ill. 64.

This doctrine was recognized in *Little Rock & H. S. W. Rd. Co.* v. *Newman,* 73 Ark. 1, but in that case the complainant and appellant could not recover for the reason that he had not sustained any special damage.    In this case the facts show that appellee sustained damage that was special and peculiar to him, not shared in by the general public.

The building of the embankment along the street *ex adverso* appellee's premises produced special injury to him, as shown by the proof, which gave him a cause of action. *Hot Springs Rd. Co.* v. *Williamson, supra; Abendroth* v. *Manhattan R. Co.,* 11 L. R. A. 634, notes.

Affirm.

### ON REHEARING.

### Opinion delivered July 9, 1906.

*Oscar L. Miles,* for appellant.

1.   The Williamson case differs essentially from this.   Williamson owned a right of passage along, and across the street which was interrupted and destroyed by the construction of the road placed there after he bought his property.   Greer bought his property after the railway company had acquired its right of way, and had constructed its line of road; and when it modified its line of road, it remained on its right of way, and did not invade the street in front of Greer's house.   In the Williamson case there was a new taking of land from which damage resulted; in the Greer case there was none.

2.   When Greer bought, and built his house upon the land, he was charged with notice (1) that a railroad was in operation on the right of way which it owned immediately in front of his premises; and (2) that a statute existed which authorized the railway company to change either its alignment or its grade line whenever, in the judgment of its board of directors, it saw fit to do so.

3.   In the Williamson case there was a physical disturbance of a right, whereby he "sustained a special damage with respect to his property in excess of that sustained by the public generally."   In Greer's case, the street and sidewalk remain intact. There was no obstruction placed in the street—no physical disturbance of a right.

*Reid & Strait,* for appellee.

McCULLOCH, J.   The principle is made clear in the original opinion that where a railroad corporation lawfully acquires a right of way over land, either by grant, prescription or condemnation, such acquisition covers all damages, present and prospective, resulting to the owner whose land is invaded.   This upon

the theory that full compensation is allowed at the time, and can be recovered only once. This principle applies, however, only to one whose lands have been invaded, and to the extent only of such invasion. One whose land has not been previously taken, under voluntary grant, prescription or condemnation, may recover compensation for damages whenever the same accrues; and where there is a new or additional taking, damages therefor may be recovered. According to the agreed statement of facts in the case, the railroad company never acquired a right of way by grant or condemnation. Its acquisition by prescription was, therefore, only to the extent of the actual taking, which was the land covered by its roadbed, and no more. *St. Louis S. W. Ry. Co. v. Davis,* 75 Ark. 283. It is said in the agreed statement of facts that the company claimed a right of way 49½ feet on each side of the center of the track, but it is not shown that the claim was asserted in a manner sufficient to give it the right by prescription. There was no actual occupancy of the ground, and no map and profile of the route was ever filed.

The company, in recently reconstructing its roadbed, has encroached upon the public street in front of plaintiff's property by building a dump 11 feet high and 26 feet wide on that side from the center of the track, thus narrowing the street to a width of 18 feet. Damages are now sought for this encroachment. The plaintiff, by his conveyance from Shelby, took title to the center of the street in front of his lot, subject to the public easement. *Dickinson* v. *Arkansas City Improvement Co., post,* p. 570. It is not important to consider whether or not the present encroachment by the company fell within the limits of that part of the street to which plaintiff held the title. In either event he is entitled to all damages incurred by reason of the encroachment, since he obtained title to the abutting lot. Whether he owns the fee to the street or not, he can, as the owner of the abutting lot, recover compensation for the damages caused by obstructing the street. *Hot Springs Rd. Co.* v. *Williamson,* 45 Ark. 429.

It is not entirely clear whether or not the strip of land covered by the roadbed was a part of the public highway when it was originally taken. The agreed statement of facts merely recites that "said defendant company originally constructed its

road along the north side of the old public highway, now known as Railroad Avenue.'" It is not important, however, whether the land originally taken was a part of the highway or not. The fact that the company had previously taken and occupied a part of the street before the plaintiff became the owner of the abutting lot would not deprive him of the right to recover the damages caused by the new taking.

Rehearing denied.