# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

LOUISVILLE, NEW ORLEANS & TEXAS RAILROAD COMPANY *v.*
JACKSON.

## Opinion delivered March 6, 1916.

1. RAILROADS—USE OF HIGHWAYS—LIABILITY FOR CAUSING OVERFLOW.—A railway company which raises its tracks by means of an embankment, placed in a public highway, is liable for any injury done to plaintiff's property, by reason of overflow of surface water or otherwise.

2. RAILROADS—OCCUPANCY OF STREET—DRAINAGE—DAMAGE TO ABUTTING PROPERTY OWNER.—Where the act of a railway company in raising its road bed causes an injury to an abutting property owner, by reason of overflow, the defendant company can not escape liability because the city authorities failed to take additional steps to remedy the defect, and afford additional facilities for carrying off the water. *Semble.* The property owner is required to do whatever is reasonably necessary to protect his property from injury, and he can not permit the injury to occur and then claim full damages, when he might have prevented it or lessened its effect by a reasonable expenditure.

3. RAILROADS—OVERFLOW OF PROPERTY—CITY STREET—CONDITION OF GUTTERS.—A railway company will not be liable for damages to an abutting property owner for the overflow of the latter's property, when the overflow is caused by the street gutter becoming so filled with dirt that it would not carry off the surface water, the gutter having been sufficient to carry off the water when the railway company raised its roadbed in the street in front of plaintiff's property.

4. RAILROADS—OBSTRUCTION OF STREET—OVERFLOW—RIGHT OF ACTION.—A cause of action growing out of the action of a railway company causing an overflow of water upon an adjacent owner's property, accrues when the damage is done, and accrues to the one who is the owner of the land at the time of the construction which causes the injury.

5. Damages—right of action—devisor of land.—Land was damaged by overflow caused by a raise in the embankment of a railway company in a city street. *Held*, the owner of the land, at the time the action accrued, having died, the right of action survived to his personal representatives, and did not descend to his heirs or devisees.

6. Tenancy in common—damage to property—suit.—In case of a tenancy in common, where there is a holding in severalty, each separate owner must sue for his share of the property or injury thereto.

7. Damages to land—permanent injury—tenancy in common.—A suit to recover damages for permanent injury to land can not be instituted by one of the tenants in common.

8. Damage to land—co-tenancy—right of action.—The allotment of land in severalty, which is damaged by overflow, to one of the co-tenants, does not operate as an assignment of the right of action of the other tenants for an injury already suffered; the land having been partitioned in its damaged condition, the other tenants retain their right of action which has already accrued.

Appeal from Phillips Circuit Court; *W. R. Satterfield,* Special Judge; reversed.

*Fink & Dinning,* for appellant.

1. Appellants are not liable for any damages resulting from the filling up of the alleged ditch. No land owner has any property rights such as will warrant him in insisting upon the maintenance of an artificial water course for surface water. 39 S. E. 752; 80 N. E. 420; 9 Oh. Dec. 120; 29 Wis. 515; 197 Mass. 568; 14 A. & E. Ann. Cas. 907; 93 Ark. 47.

2. The portion of the embankment complained of, being situated in a city, surface water is a common enemy, against which any proprietor has a right to defend himself by any means deemed necessary. 87 Ark. 41; 86 N. Y. 140; 65 *Id.* 341; 95 Ark. 345; 66 N. J. L. 641; 58 L. R. A. 329; 87 Am. Dec. 625. If appellee has suffered any damage, it is *damnum absque injuria* and he is entitled to recover nothing.

3. Appellee was not the owner of the property at the time the acts of negligence were committed. Having acquired title by will, appellee held as purchaser and not

by inheritance, and is not entitled to damage for injury. 77 Ark. 387; 97 *Id.* 406; 158 U. S. 1.

4. It was error to refuse instructions 5, 6, 7 and 12, as requested by appellant. The testimony shows that the injury, if any, was caused by the failure of the city of Helena to keep its gutters cleaned, and this should have been submitted to the jury under proper instructions.

*Andrews, Cunningham & Burke* and *Moore, Smith, Moore & Trieber,* for appellee.

1. A railway company can not so embank or raise its track as to unnecessarily or negligently disturb the surface drainage and throw water onto other property. Nor can it injure the lands of other proprietors by flooding them with surface water by interruption of the natural drains. This is the settled rule in Arkansas. 39 Ark. 463; 93 *Id.* 52; 80 *Id.* 335; 66 *Id.* 271. The case in 87 Ark. 41 does not apply here. The decision in that case is based upon a well recognized exception to the general rule as to city lots. For the reason see p. 44 *Ib.* and 65 N. Y. 341.

2. Where the natural surface has been used as a grade line for streets, and the abutting property owners have used their property with reference to such grade line, the city afterward can not change the grade from the natural surface so as to damage such abutting property without liability for damages. 98 Ark. 206; 104 *Id.* 136; 77 Ill. 194; 83 Tex. 239.

3. Appellee was the owner at the time the embankment was constructed. The work was not completed before the death of appellee's grandfather. 77 Ark. 387.

4. The objection that there is a defect of parties came too late. Kirby's Digest, § 6093; 95 Ark. 32.

5. Instructions 5, 6, 7, and 12 asked by appellant were merely speculative in the absence of evidence that the condition of the gutter had anything to do with the overflowing of the sidewalk and of appellees' property. 90 Ark. 104; *Ib.* 378; 94 *Id.* 358; 88 *Id.* 594.

6.  The verdict is not excessive.

McCULLOCH, C. J.   The plaintiff, J. M. Jackson, instituted this action in the circuit court of Phillips County against the two defendant railway corporations to recover damages alleged to have been sustained to his real property in the City of Helena on account of the raising of an embankment which changed the flow of the water and caused it to flow to and accumulate on plaintiff's said property.   One of the defendant companies is an Arkansas corporation, which holds the franchise, and the other is a foreign corporation operating the railroad along the line.   No question is raised in the suit about misjoinder of the defendants or as to which one of the defendants is liable for the alleged injury, if there is any liability at all.

The real property alleged to have been injured consists of two lots on which there are three store houses fronting east on Natchez street, at the southwest corner of Natchez and Missouri streets.   Natchez street runs north and south and is sixty feet wide, the railroad operated by the defendants running along the east side of that street.   The center of the track is ten feet west of the east line of the street.   Originally the track was about on a level with the grade of the street, and, according to the testimony adduced by the plaintiff, there was a ditch running along the west side of the track at the end of the ties which carried a considerable quantity of water down the track to the next street on the south, Arkansas street, where it was taken care of without injury to adjacent property.   In the year 1913, the defendants were compelled, on account of the raising of the track of another intersecting railroad, to raise this track about two or two and a half feet, and in doing so the embankment was sloped off from the west side of the track to about the center or crown of the street.   The ditch just spoken of was, according to the testimony of the plaintiff, completely obliterated by the raising of the dump, and no other means were provided for taking care of the addi-

tional water which was thrown over into the gutter on the west side of the street.

The theory of the plaintiff is that the additional water thrown over into the gutter overtaxed its capacity and could not be taken care of, and that when it rained the surplus water rose above the curb and ran under the plaintiff's store houses. It is uncontradicted that the flow of the water was from east to west—that the water came from the levee east of Natchez street and flowed over the railroad track, and that when the ditch was filled up there was nothing to prevent it from flowing on to the gutter and on the west side of Natchez street. The plaintiff alleged in his complaint that he was the owner of the property and the answer of the defendants contains a denial of that allegation. It is also denied in the answer that there was any ditch along the edge of the railroad track, and denied that the raising of the embankment caused any additional flow of water. Plaintiff alleged that permanent injury to the property was inflicted by the raising of the embankment and the digging of the ditch, which depreciated the value of the property, and the jury awarded damages for such permanent injury in the sum of $2,500. Defendants have appealed.

It is earnestly insisted that the testimony fails to make out a case of liability against the defendants, but after careful consideration of the evidence we conclude that if the testimony be accepted in its light most favorable to the plaintiff's cause of action there is enough to submit to the jury on the issue as to whether or not the injury was caused by the act of the defendants in raising the embankment and filling the ditch. There is a sharp conflict in the testimony as to whether or not there was any ditch there at all, but that conflict must be treated as settled in plaintiff's favor by the verdict of the jury. There is also a sharp conflict in the testimony as to whether or not the surface water rose above the curb and flowed on to plaintiff's property—there being testimony adduced by the defendants which tends to show that there was not sufficient water from the heaviest rains

to rise above the curb; but that issue, too, must be treated as settled by the verdict.

The argument is made, also, that it was surface water that flowed over towards plaintiff's adjacent property, and also that the ditch was not a natural drainway, and that for those reasons the defendants are not liable. It is asserted that the defendant railroad companies had the same right as any other property owner to defend against surface water, and that upon that theory there could be no liability. The defendants invoke the doctrine announced by this and many other courts that surface water is a common enemy which any land owner may defend against with such measures as he may deem expedient, without laying himself liable to any other owner upon which the water is caused to flow. *Levy* v. *Nash,* 87 Ark. 41; *McCoy* v. *Board of Directors of Plum Bayou Levee Dist.,* 95 Ark. 345.

(1) That doctrine, though well established, has no application to the act of the railroad companies in raising their embankment to the injury of adjacent property owners, for the simple reason that such an act is not for the purpose of defending against surface waters. The occupancy of the railroad companies of the public highway was entirely permissive, and they could only do so by paying to the adjacent land owners any damage caused by such occupancy. They therefore became liable for any damage caused by a change in the condition of the highway brought about by such occupancy, regardless of the question whether or not the water thus diverted was surface water or was flowing through a natural drainway. If the change in the condition of the highway from the occupancy by the railroads caused the injury, then the companies are liable, whether there was any negligence in the construction of the embankment or not, for the Constitution of the State gives a guaranty that private property shall not be taken or damaged for public use without due compensation. The same principle applies where there has been a former appropriation of part of the public highway and afterwards there is a

change made which causes additional damage. *L. R. & Ft. S. Ry. Co.* v. *Greer,* 77 Ark. 387. So, under the law, the defendants are liable for any injury done to plaintiff's property by raising the embankment in the public streets. The question whether or not the accumulation of water under the store houses was caused by the raising of the embankment was one of fact for the determination of the jury.

The following instruction, requested by defendants, was refused:

"V. The court instructs the jury that the defendant railroad company has no control over any part of the street adjoining the premises mentioned in the complaint, except that portion actually occupied by its roadbed and that any damages resulting from any defect in the drainage of surface water on or along said street caused by the failure of the officers of the city of Helena to use reasonable care in the maintenance and repair of the said street are not chargeable to this defendant and this defendant is not liable for any part thereof."

(2) We do not think that the court erred in refusing to give the instruction, for the reason that there is no evidence in the record to the effect that the injury was caused by a failure on the part of the city authorities to maintain and repair the street. It is true, as recited in the instruction, that the railroad companies had no control over any other part of the street except that part occupied by their track, but that condition does not exonerate the companies from liability for injury caused by their acts in changing the situation. If the act of the companies in raising the embankment caused the injury, the companies are not excused because the city authorities failed to take additional steps to remedy the defect and afford additional facilities for carrying off the water. The abutting property owners had no control over the street, and can not be made to suffer from an injury caused by an act of the railroad companies because the city authorities failed to exercise proper care to avert the injury.

Of course, the property owner is required to do whatever is reasonably necessary to protect his property from injury, and can not permit the injury to occur and then claim full damages when he might have prevented it or lessened its effect by a reasonable expenditure. That question, however, is not raised on the present appeal, and we need not discuss it further, for it is sufficient to say that the rule announced in the instruction just referred to is not correct.

(3) Instruction No. 6, which was requested by defendants and refused by the court, reads as follows: "VI. The court instructs the jury that this defendant railroad company has no authority or right and it is no part of his duty to clean off or keep in good condition, the gutter in front of this plaintiff's property and if you find that the damages alleged in the complaint were caused by the failure on the part of the city of Helena, or any other person to keep the gutter adjoining the plaintiff's premises clean, then you will find for the defendant."

We think that instruction should have been given. The testimony introduced by defendants tended to show that the flow of water was not sufficient to overflow the gutter, and that if the water rose above the curbing and flowed under the store houses of plaintiff it was caused solely by the fact that the gutters were allowed to fill up with trash and were not cleaned out. The defendants were entitled to have that issue submitted to the jury, because if the gutters, as they existed at the time the embankment was raised, were sufficient to take care of the water, the defendants would not be rendered liable by the fact that they were subsequently allowed to fill up so as to incapacitate them from taking care of the water. There was an issue on that subject which should have been submitted to the jury, and we think that the court erred in refusing to do so.

The defendants in their answer denied the plaintiff's ownership of the property in question, and they undertook to raise that question by requested instructions

which the court refused. The testimony is undisputed on the question of ownership, but there is a conflict as to the time the embankment was raised so as to inflict a permanent injury to the property. The property was originally owned by plaintiff's grandfather, Mr. John P. Moore, who died in September, 1913, leaving his last will and testament whereby he devised the property in question to the plaintiff and seven other persons. The property was held by the devisees as tenants in common, plaintiff being the owner of an undivided eighth, until there was a partition of the lands of the estate in September, 1914, when this particular property fell to plaintiff in the division.

The testimony introduced by the plaintiff tends to show that the embankment was raised so as to cause the injury in October, 1913, which was after the death of Mr. Moore, the devisor. Defendant's testimony tends to show that the embankment was raised during Mr. Moore's lifetime. It was admitted that certain work was done as late as October, 1913, but that this merely applied to raising one of the crossings and that the work of raising the embankment along the street was done some time prior to Mr. Moore's death. The state of the testimony is that there is a conflict whether the embankment which caused the injury was constructed before the death of Mr. Moore, but it is undisputed that it was completed before the plaintiff became the sole owner of the property.

(4-5) Defendants asked an instruction as to ownership in the following words: "II. The court instructs the jury that if it finds from the testimony in this case that the plaintiff was not the owner of the property mentioned in the complaint at the time the alleged acts of negligence were committed by the defendant, then you will find for the defendant."

This instruction was correct in any view of the case, and the court erred in refusing to give it. There is no controversy about the injury being a permanent one; if there was any injury caused by the defendants at all. In fact, the plaintiff brought his suit upon the theory

that the injury was a permanent one, and made no attempt to establish any other kind of injury. There was no effort to prove that there had been loss of rents or any other temporary injury by reason of the construction of the embankment. The measure of damages sought to be established, and which the court submitted to the jury, was the permanent depreciation of the value of the property by reason of the additional water which flowed from the street.

Now, if the injury occurred during the lifetime of Mr. Moore, the devisor, the right of action therefor did not descend to his heirs or devisees, but survived to his personal representatives, the executor or administrator. The law on that subject is very well settled. In *Railway* v. *Greer, supra,* we said: "The cause of action accrues when the damage is done, and accrues to the one who is the owner of the land at the time of the construction which causes the injury or damage." To the same effect see *Brown* v. *Arkansas Central Ry. Co.,* 72 Ark. 456; *Illinois Cent. Ry. Co.* v. *Allen,* 39 Ill. 205; *Toledo, Wabash & West. Ry Co.* v. *Morgan,* 72 Ill. 155; *Roberts* v. *Northern Pacific Rd. Co.,* 158 U. S. 1; *McFadden* v. *Johnson,* 72 Penn. 336.

In *Moore* v. *City of Boston,* 62 Mass. 274, it was expressly decided that a right of action of a land owner against the city for property taken for public use survives to his executor or administrator, and not to the heirs.

Defendants attempted to raise the further question of the right of the plaintiff to recover for the whole damage, even though the injury occurred after the death of Mr. Moore and while plaintiff and the other devisees held the property as tenants in common.

Instruction No. 4, which reads as follows, was refused: "IV. The court instructs the jury that if it finds from the testimony that the plaintiff was the owner of the property mentioned in the complaint at the time of the commission of the said acts of negligence jointly with other owners as tenants in common then you will find for the plaintiff only such pro rata part of the dam-

ages sustained by the property through the negligent acts of the defendant as his interest in the property bears to the whole interest in the property."

(6)   There is some conflict in the authorities as to the right of a tenant in common to sue for the recovery of the whole premises or injury thereto.   We are of the opinion that according to the more recent authorities the better rule is to hold that in case of tenancy in common, where there is a holding in severalty, each separate owner must sue for his share of the property.   While that point was not expressly decided in the case of *Cottonwood Lumber Co. v. Walker,* 106 Ark. 102, such is necessarily the effect of the decision.   The weight of authority as it now stands is, we think, in favor of that rule. 38 Cyclopedia of Law, 116-118; *Ridge* v. *Transfer Co,* 56 Mo. App. 133; *Anderson* v. *The Thunder Bay River Boom Co.,* 57 Mich. 216; *Wadley* v. *Marathon County Bank,* 58 Wis. 546; *Reed* v. *Chicago, Milwaukee, Etc. R. Co.,* 71 Wis. 399.

(7)   For a much stronger reason, a suit to recover damages for permanent injury to the land can not be instituted by one of the tenants in common.   Here the injury was to the freehold and plaintiff was not the sole owner, nor was he in exclusive occupancy of the premises, and there is no principle of law which ought to permit him to sue for the entire amount to be recovered by all the tenants in common.   The case of *Birmingham Ry. Light & Power Co.* v. *Oden,* 146 Ala. 495, is precisely in point.   In that case five out of seven owners, as tenants in common of real estate abutting on a street, sued the railway company for damages resulting from the construction of an embankment, and the court held that the limit of their recovery was their several interests, which was five-sevenths of the total depreciation of value.   According to that rule of law, the plaintiff is not entitled to recover more than his share of the total amount of damages inflicted, even if the injury was caused after the death of Mr. Moore.   If it was caused prior to that time, then he is not entitled to recover at all, for the right

of action was, as before stated, in the executor or administrator and not the devisees under the will. The defense was clearly raised in the answer, for the answer contained an express denial of the plaintiff's alleged ownership.

(8) Counsel for plaintiff invoke the rule established by many decisions to the effect that the allotment in severalty of lands inherited in common does not change the nature of the estate from inheritance to purchase, and that the one to whom the allotment .is made takes the whole by inheritance, the same as if it had directly descended to him from the ancestor. *Martin* v. *Martin,* 98 Ark. 93; *Cottrell* v. *Griffitts,* 57 L. R. A. 332. The application of that principle can not, however, serve as grounds for holding that the allotment of the land in severalty to one of the co-tenants operates as an assignment of the right of action of the other tenants for an injury already suffered. The land is partitioned in its damaged condition and the other tenants retain their right of action which has already accrued. In this respect lands held by inheritance do not differ from those otherwise held.

The judgment must be reversed for the errors indicated, and the cause will be remanded for a new trial.