JACKS BAYOU DRAINAGE DISTRICT *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered December 14, 1914.

1.  IMPROVEMENT DISTRICTS—JURISDICTION OF CIRCUIT COURT—FORMATION.
    —On an appeal to the circuit court from an order of the county court, establishing a drainage district, the issue is on trial anew in the circuit court, which court has the same power to establish the district as the county court had.

2.  IMPROVEMENT DISTRICTS—FORMATION—PETITION—DUTY OF COURT.—Where the petition for the establishment of an improvement district does not have a majority of the signatures of land owners, either in number, acreage or value, there should be no uncertainty about it being to the advantage of the land owners; and under such circumstances an uncertainty should be resolved in favor of the

owners of the property to be assessed, and upon whose shoulders the burden of the improvement will rest.

3. IMPROVEMENT DISTRICTS—FORMATION—BENEFIT—FINDING OF COURT.—Evidence *held* to show that a contemplated drainage district would not be for the benefit of the land owners within the said district.

4. TRIAL—EVIDENCE—REFUSAL OF COURT TO HEAR MORE.—It is within the discretion of a trial judge to refuse to hear more testimony on the issue of the formation of a drainage district, where the case is sufficiently developed before him.

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

STATEMENT BY THE COURT.

The county court of Lonoke County formed certain lands therein into a drainage district upon the petition of the property owners. There were several remonstrances filed to the granting of the petition. The St. Louis, Iron Mountain & Southern Railway Company, among others, remonstrated against the establishment of the district. Upon the hearing the court found in favor of its establishment, and from this finding the said railway company prayed and was granted an appeal by the county court as shown by the amended record herein.

A great deal of testimony was introduced at the trial in the circuit court and a great majority of the witnesses testifying stated that the benefits to be derived from the establishment of the district would not be in anything like fair proportion to the expense or the cost thereof. Some of them testified that the lands would derive no benefit whatever from the drainage, that most of them were of the pipe clay character that would not produce anything if they could be cultivated. Two of the commissioners testified that the improvement would greatly benefit all the lands in the district and some others were also of that opinion. It was conceded that the petition did not contain a majority of the land owners, either in number, acreage or value.

The court was asked to and did make the following findings of fact:

"*First.* Is it the opinion of the court that it would be to the best interest of owners of real property within the

proposed district that the same become a drainage district?

"The court can not find the facts as set out in the first clause, but finds that it would be a great benefit to some of them.

"*Second.* Is it the opinion of the court that the establishment of the proposed Jacks Bayou Drainage District would be to the advantage of the owners of real property therein?

"The court makes the same finding to this as the first.

"*Third.* Is it the opinion of the court that the cost of the proposed drainage is reasonable?

"The court can not find the facts as set out in third clause.

"*Fifth.* Is it the opinion of the court that the lands embraced in the proposed drainage district are in need of drainage?

"The court finds that some of the lands in the proposed district need draining, but a great majority of the land owners of the district are opposed to the proposed drainage, both in number and amounts of land owned by them, and it would therefore be unjust to force it upon them."

The court reversed the judgment of the county court establishing the district and dismissed the petition, and from this judgment this appeal is prosecuted.

*Trimble & Trimble* and *J. A. Watkins,* for appellant.

1. The circuit court should have sustained the motion to dismiss the appeal from the county court because the railway company had filed no affidavit for appeal from the final order in the cause in the county court. Moreover, the record fails to show that its prayer for appeal was granted. 104 Ark. 119; 92 Ark. 148; 65 Ark. 419; 27 Ark. 156; 21 Ark. 73.

2. The court in its discussion with attorneys as to the date of final hearing of the case, erred in holding "that plaintiff would have to show that a majority of the residents in the district and owners representing a

majority of the acreage was in favor of the district," etc. Acts 1909, p. 829, as amended by Acts 1911, p. 193, § 2.

*E. B. Kinsworthy, Thos. B. Pryor, R. E. Wiley, T. E. Hendricks* and *T. D. Crawford,* for appellee.

1. The corrected record shows that three different affidavits for appeal from the county court's order were filed. The first appeal was prayed and allowed in the county court, and the second and third were prayed of and allowed by the circuit clerk. Either method of procuring an appeal is sanctioned by the statute. Kirby's Dig., § 1487.

No objection was raised in the lower court to the sufficiency of the affidavit. It is too late to object here. 52 Ark. 318, and cases cited; 59 Ark. 177.

2. In the light of the testimony the circuit court was justified in finding that it was not to the best interest of the owners of real property within the district that the district should be formed. Section 2 of the act of 1909, as amended by act of 1911; 106 Ark. 303. And the court's finding of fact upon conflicting evidence is conclusive. 84 Ark. 359; 88 Ark. 587.

KIRBY, J., (after stating the facts). The proceedings for the establishment of this drainage district were had under the provisions of the Acts of the Legislature of 1909, as amended by Acts of 1911 (Acts 1909, p. 829, 1911, p. 193).

Appellant's first contention is that the circuit court erred in not dismissing the appeal from the county court for want of jurisdiction, claiming no affidavit had been made therefor and no order granting the appeal. The amended record shows, however, that an affidavit was made by appellant for appeal, stating it was aggrieved by the order of the court overruling its remonstrance and exceptions to the report of the remonstrants assessing the benefits against it, etc., and the record also shows after the judgment establishing the district was made, and on the same day that an appeal was prayed and granted. The contention is therefore without merit and the circuit court had jurisdiction of the cause.

It is next contended that the court erred in stating in the discussion with the attorneys after overruling the motion of the drainage district to dismiss the appeal that plaintiff would have to show that a majority of residents and owners representing a majority of the acreage was in favor of the district, otherwise judgment would be in favor of the remonstrants and the finding of the county court reversed. It is insisted now that the trial court did not correctly understand the law relating to the establishment of drainage districts as shown by said announcement, and therefore erred in its findings of fact and judgment thereon. It calls attention to section 2 of the Acts of 1909 as amended by the Acts of 1911 in support of this contention, which provides:

"If upon the hearing provided for in the foregoing section, the petition is presented to the county court, signed by a majority, either in numbers or in acreage, or in value, of the holders of real property within the proposed district, praying that the improvement be made, it shall be the duty of the county court to investigate, as provided in the preceding section, and to establish said district if it is of the opinion that the establishment thereof will be to the advantage of real property therein."

(1-2) It is true under the provisions of this law that the county court had authority to investigate the conditions and to establish the district prayed for and create the improvement, if it was of opinion that the establishment thereof would have been to the advantage of the owners of real property therein. And while it is also true that the circuit court found that the improvement would be of great benefit to the owners of some of the real property within the district, and that some of the lands were in need of drainage, it found further that the cost of the proposed drainage district was not reasonable, that a great majority of the land owners of the district, both in number and amount of land owned, were opposed to it, and that the establishment of the district would be unjust to them and reversed the judgment of the

county court. The matter was for trial anew in the circuit court, which, of course, had the same power to establish the district as the county court had. This court said relative to the exercise of the power given to establish a drainage district when not petitioned for by the majority in numbers, ownership or acreage of the lands proposed to be included, in *Burton* v. *Chicago Mill & Lbr. Co.*, 106 Ark. 304: ''This is certainly a very great power vested in the court, and when exercised in the face of the failure of petitioners to secure the signatures of a majority either in number or acreage, or value, there should be no uncertainty about it being to the advantage of the land owners; and under such circumstances an uncertainty should be resolved in favor of the owners of the property to be assessed, upon whose shoulders the burden of the improvement will rest.'' And this statement is now reaffirmed.

(3) Without doubt great uncertainty existed about the establishment of the district being to the advantage of the land owners which the court properly resolved in favor of the owners of the property to be assessed and against the establishment of the district proposed.

There was much testimony showing that a great portion of the lands included in the district were composed of or underlayed with a whitish pipe clay and so unfertile as to be of little use for agricultural purposes. The evidence is amply sufficient to sustain the finding and judgment of the circuit court.

(4) Neither is there any merit in appellant's contention that the court erred in announcing that the case was sufficiently developed, and in declining to hear more testimony. Much testimony had already been introduced disclosing fully the condition, and after the matter had been so thoroughly developed, it was within the discretion of the trial judge to decline to hear further testimony. It was a public matter being investigated, and after the great amount of testimony was heard that the record shows to have been introduced, other testimony would have necessarily been along the same lines, and

the court was not required in the exercise of a sound discretion to continue the investigation until every land owner in the district could be heard.

We find no prejudicial error in the record, and the judgment is affirmed.