DRAINAGE DISTRICT No. 18, CRAIGHEAD COUNTY, v. CORNISH.

4-5718                                        131 S. W. 2d 938

Opinion delivered October 2, 1939.

Horace Sloan, for appellant.

Arthur L. Adams, for appellee.

C. M. Buck and Chas. D. Frierson, amici curiae.

HOLT, J.   Drainage District No. 18 of Craighead county is one of the numerous improvement districts organized to drain lands within the St. Francis and the Little River deltas, and to protect those lands from the flood waters of one or both of those rivers.   The St. Francis River flows west of District No. 18 and the Right-Hand Chute of Little River flows in a southwesterly direction along the south and east end of the district.

When the plans of District No. 18 were prepared by the engineer, it was contemplated that a levee be constructed along the west boundary of the district, to protect the lands therein from the annual overflow of the St. Francis River; but this levee was not constructed, for

the reason that its cost was thought to be too great for the district to undertake. The ditches, however, were constructed, but it has been concluded that they were not dug to a proper slope and, for that reason, filled in, until their efficiency has now been greatly reduced. The absence of a levee along the St. Francis River on the west side of the district, and one along the Right-Hand Chute of Little River has conduced to that end.

Before District No. 18 in Craighead county was organized, Drainage District No. 17 of Mississippi county was organized. The boundary lines between Craighead and Mississippi counties form the boundaries between these improvement districts.

As a part of its improvement Drainage District No. 17 of Mississippi county dug a ditch for a distance of about two and one-half miles, along its west boundary line, to the southeast corner of section 36, township 13 north, range 7 east, which point is the southeast corner of Drainage District No. 18 of Craighead county. That ditch runs north and south, along the line between Craighead and Mississippi counties. At the southeast corner of Drainage District No. 18 the ditch turns west and runs along the boundary line between Craighead and Poinsett counties to the track of the Cotton Belt Railroad, where the ditch turns south, and, running through Poinsett county for a distance of about two miles, finds an outlet in the Right-Hand Chute of Little River.

As a part of its improvement Drainage District No. 17 constructed a levee along the right-hand bank of Right-Hand Chute of Little River, which at one point runs over and across a part of the southeast quarter of section 36, township 13 north, range 7 east. This levee follows the general course of Right-Hand Chute of Little River through Poinsett county to the ditch of District No. 17 emptying into Little River.

Drainage District No. 18 dug a ditch along its south boundary, which is the county line between Poinsett and Craighead counties, to the Cotton Belt Railroad, where the same outlet was found in the ditch of Drainage Dis-

trict No. 17 which empties into Little River, so that there were ditches both east and west of the Cotton Belt Railroad along the entire south boundary line of Drainage District No. 18.

It was planned to afford drainage to District No. 18 by digging ditches running north and south in that district, all of which emptied into the ditches along the south boundary line of District No. 18, which ditches, as has been said, emptied into the drainage ditch of District No. 17 which emptied into Little River, through an inverted siphon constructed by Drainage District No. 7 of Poinsett county.

For the privilege of using the outlet which District No. 7 of Poinsett county afforded through its inverted siphon, District No. 18 paid District No. 7 the sum of $100,000. It thus appears that Drainage District No. 18 finds an outlet for the water which its ditches collect through the facilities of District No. 17 of Mississippi county and District No. 7 of Poinsett county.

These and the other drainage districts lying in this delta south of the Missouri state line had a common problem, which consisted in carrying away the water which was poured into their territory by drainage ditches in the state of Missouri and in protecting their lands from the annual overflows of the St. Francis and Little rivers.

The problem was beyond the resources and revenues of these districts, and an appeal was made to the federal government, which has promised and is rendering aid under the provisions of the federal statute commonly referred to as the Overton Flood Control Bill, 33 U. S. C. A., § 701. It was found that levees were as important and more expensive than ditches to afford drainage. In other words, effective drainage could not be afforded by ditches unless protection was also afforded by levees from the overflows of the St. Francis and Little rivers.

In these circumstances the federal government proposes, at least so far as District No. 18 in Craighead county and District No. 17 in Mississippi county are con-

cerned, to construct essential levees to protect their drainage projects; but this offer is conditioned upon the acquisition by these drainage districts of all the necessary rights-of-way for the levees and the payment of incidental damages arising out of their construction.

Appellee, a landowner in District No. 18, filed this suit against the commissioners of that district, in which he alleged (1) That the district proposes to furnish, at its expense, to the United States, all lands and easements necessary to the execution of the works of building levees, and to hold the United States free from damages resulting from the construction of the works, and to take over and maintain the works after they shall have been completed, to-wit: (a) such portion of the project as relates to the west portion of the floodway on the Right-Hand Chute of Little River, affecting lands in sections 35 and 36, township 13 north, range 7 east, and (b) such portion of the project as relates to the construction of a levee on the east side of the St. Francis River in Craighead county and adjoining lands embraced in the Drainage District; (2) To clear and clean out the ditches of the district.

The complaint of the landowner further alleges that Drainage District No. 18 lies wholly within the eastern district of Craighead county, and recites the number of ditches which have been constructed therein, with their outlets as hereinabove stated, and the failure of the district to construct the levees on the east side of St. Francis River, being the west side of the district, as recommended in the final report of the engineer of the district on the organization thereof. There is alleged also the arrangement under which District No. 18 of Craighead county paid District No. 7 of Poinsett county the sum of $100,000, used in the construction of the inverted siphon hereinabove referred to, with the allegation that, through inattention to this siphon, it had become inadequate as an outlet. It was alleged that District No. 18 had issued bonds in the sum total of $350,000, and had pledged the assessment of betterments totaling nearly $800,000 to secure the payment thereof.

It was further alleged by the landowner that the federal plan for flood control contemplates the widening of the floodway for the Right-Hand Chute of Little River. This floodway consists of two parallel levees, at some distance back from each bank line of the said Right-Hand Chute, so as to form a passageway for Right-Hand Chute flood waters. This plan provides for the construction of a ditch on the land side and parallel to the proposed west floodway levee, so as not to destroy the ditch No. 4 of Drainage District No. 17 of Mississippi county, thereby preventing that ditch from having an outlet, as the moving back of the levee behind the present ditch No. 4 destroyed that part of the ditch which will then be embraced in the floodway. In other words, after the construction of the floodway ditch No. 4 of Drainage District No. 17, which now runs along the south line of Drainage District No. 18, will be closed for about a mile, and the new ditch will be constructed on the land side of the levee diagonally across section 36, township 13 north, range 7 east, and connecting with the original ditch No. 4 in section 35, township 13 north, range 7 east.

The federal government proposes to dig this new ditch, and to construct the levees, but has called upon District No. 18 to provide the right-of-way and the necessary easements, and to pay incidental damages.

The landowner alleged that this expense should be met and paid by District No. 17 of Mississippi county, and not by District No. 18 of Craighead county, although the right-of-way and the easements which the federal government asks District No. 18 to acquire lie within District No. 18. It is alleged that the commissioners of District No. 18 are without power to acquire and pay for this right-of-way and easements. It was also alleged that the commissioners proposed to acquire right-of-way and easements for the levee to be constructed on the east side of St. Francis River.

There are no conflicts as to the facts; indeed, the essential facts appear in a stipulation as to the facts filed by the parties. The questions raised relate to the powers of the district.

The district has no outstanding or unpaid obligations. On the contrary, it has anticipated and purchased $96,000 of its unmatured bonds, and it is not questioned that funds will be available to acquire the right-of-way and easements without consuming the betterments originally assessed; but the court below held that these betterments had been pledged to secure the bonds issued and sold by the district, and could not be used to provide right-of-way for the proposed levees. The court held, however, that such funds might be lawfully expended for cleaning out the ditches. It appears that the surplus of money which District No. 18 has on hand resulted largely from the fact that the district did not construct the levee on the east side of St. Francis River, which levee was a part of the original plan of the district, but in its final plans was postponed.

The correctness of the decree relating to the cleaning out work on the ditches is conceded; and we think cannot be questioned.

But it is very earnestly insisted that it is *ultra vires* the district to acquire the right-of-way in question. In support of this contention it is insisted that District No. 18 is taking over a part of District No. 17's improvement. It is true that when District No. 17 constructed its improvement, it built a levee in what is now a part of District No. 18; but that levee was abandoned. Another and a set-back levee has to be constructed, and it does not appear that District No. 18 has appropriated any part of District No. 17's improvement. The attorney for District No. 17 appeared at the oral argument in this case, and disclaimed any contention on the part of District No. 17 to the affect that its control over its own improvement is being interfered with.

The federal government has proceeded upon the assumption that each of the various drainage districts which it proposes to aid shall acquire such right-of-way as is required in the particular district. There is no controversy between Districts 18 and 17 over the control of their respective improvements and the set-back levee

and the property which will be damaged by its construction lies within the boundaries of District No. 18.

As to the levee along the St. Francis River, it may be said that the necessity for this levee to afford adequate drainage was recognized when District No. 18 was organized. It is now proposed to build a larger and longer levee without cost to the district except to provide the right-of-way.

Upon the question of the authority of the drainage district to build levees, it may be said that the district was organized under the provisions of act No. 279 of the Acts of 1909, as amended from time to time, known as the Alternative Drainage System. Section 32 of this act, which as amended by § 5 of the Acts of 1913, p. 738, appears as § 4489, Pope's Digest, reads as follows: "The word 'ditch,' as used in this act, shall be held to include branch or lateral ditches, tile drains, levees, sluice-ways, floodgates, and any other construction work found necessary for the reclamation of wet and overflowed land. And this act shall apply to the organization of districts, the main objects of which is the construction of levees."

It appears, therefore, that it is not *ultra vires* the drainage district to construct a levee if the levee is necessary to afford drainage, and in this connection the undisputed testimony is to the effect that the proposed levees are necessary to prevent the overflowing and filling up of the drainage ditches.

Now, while it is true that the proposed levee along the Right-Hand Chute of Little River lies entirely within District No. 18, it is also true that not all the proposed right-of-way for the levee along the St. Francis River lies within District No. 18. But it is not *ultra vires* the drainage district to build this levee or to acquire the right-of-way for its construction on that account.

The case of *Bayou Meto Drainage District* v. *Ingram,* 165 Ark. 318, 264 S. W. 947, involved the question of the powers conferred upon drainage districts under the provisions of act 279 of the Acts of 1909 and the acts amendatory thereof. An adequate outlet for the drain-

age did not exist within the boundaries of that district, and to secure this outlet it was necessary to continue the principal ditch several miles beyond the boundaries of the district. It was there said: "One of the sections of the statute (Crawford & Moses' Digest, § 3629) provides for the condemnation of a proper outlet for the drainage system, and that for that purpose a ditch or drain may be extended beyond the limits of the district; . . ."

Here, the levees are as essential to the efficiency of the project as was an outlet in the Ingram case, *supra*. The purpose of the levees is to prevent the overflow of the lands and the filling up of the ditches which always accompanies an overflow, and upon the authority of the Ingram case, *supra,* and the statutes to which it refers, we hold that the drainage act confers authority, not only to build the levee, but to build it beyond the boundaries of the district. If the district may build a levee, it may, of course, acquire the necessary right-of-way for another agency to build the levee for it.

The court below held that Drainage District No. 18 had the power to acquire the right-of-way for the levees, but decreed that the commissioners "are hereby enjoined and restrained from expending the district's funds, now on hand or that may be derived from the present tax levy or levies, for the purpose of acquiring any rights-of-way or flowage rights for the proposed federal levees and ditches in the district, and that, before proceeding with attempting to acquire any such rights-of-way of flowage rights, the district must petition the county court and secure from it an order authorizing the levy of an additional tax for that special purpose. That, in respect to all other issues raised by the complaint, the complaint is hereby dismissed for want of equity."

In the Ingram case, *supra,* it was discovered that lands which were, not only outside the boundary limits of the original district, but which were in adjoining counties, would be benefited by the proposed improvement, and the proceedings were transferred from the county to

the circuit court, where those lands were annexed and made a part of the district, and it was ordered that betterments be assessed against those lands. The plans of the district were altered and enlarged, and § 3625, Crawford & Moses' Digest (§ 4476, Pope's Digest) was quoted as conferring that authority. This section reads, in part, as follows: ''The commissioners (of the district) may at any time alter the plans of the ditches and drains, but, before constructing the work according to the changed plans, the changed plans, with accompanying specifications, showing the dimensions of the work as changed, shall be filed with the county clerk, and notice of such filing shall be given by publication for one insertion in some newspaper issued and having a *bona fide* circulation in each of the counties in which there are lands belonging to the district. If by reason of such change of plans, either the board of commissioners or any property owners deem that the assessment on any property has become inequitable, they may petition the county court, which shall thereupon refer the petition to the commissioners hereinbefore provided for, who shall reassess the property mentioned in petition, increasing the assessment if greater benefits will be received, and allowing damages if less benefits will be received or if damages will be sustained.''

Here, it is not contended that the construction of the levee will render the original assessment of betterments inequitable. On the contrary, it is shown by the undisputed testimony that the construction of the levee will protect the entire district, and that the benefits of their construction will inure to all the lands in the district equally and ratably. Nor has there been any change in the boundaries of the district. It is proposed only to make the original plans effective by building levees which have been found necessary for that purpose.

It is true that the construction of the levees will require the use of an increased per cent. of the original betterments; but it is not contended that the cost of the levees will exceed the assessed betterments. If this were

true, we would have a question not presented by this record. .

In addition to § 3625, Crawford & Moses' Digest (§ 4476, Pope's Digest) the opinion in the Ingram case, *supra,* quotes §§ 3628 and 3630, Crawford & Moses' Digest (§§ 4479 and 4481, Pope's Digest), and it was held that those sections afforded authority for the enlargement of the district and for the alteration of its plans. In so holding the court there said: "It is the contention of counsel for the district that these three sections (§§ 3625, 3628 and 3630, Crawford & Moses' Digest) last quoted clearly authorize the further proceedings sought to be undertaken, and we are of the opinion that counsel is correct in this contention. On the other hand, it is the contention of counsel for appellees that, in the first place, the statute does not authorize a change of plans and an extension of boundaries of the district after the approval of the original plans and the assessment and confirmation of benefits; and second, that, in the present instance, the improvement as originally planned and executed, was substantially complete, and that the so-called additional improvement proposed by the changed plans is, in effect, a new and independent improvement. It is evident, from the broad and comprehensive language used by the lawmakers in framing this statute, and the numerous details set forth in the various sections, that it was intended to give every power necessary to complete drainage schemes. The statute clearly takes cognizance that a drainage scheme is ineffectual and incomplete unless the water is completely gathered up and an outlet provided for carrying it entirely away. In other words, the statute contemplates that a drainage ditch does not drain unless the water is taken care of and entirely carried away. So there is a clearly expressed purpose on the part of the lawmakers to authorize everything that is necessary to get the water off the land and into an outlet which will carry it somewhere into the open channel of a stream."

Section 4480, Pope's Digest, expressly authorizes drainage districts to condemn lands for an outlet lying

868

without the improvement districts; and we think there is the same authority to condemn lands for a right-of-way for a levee lying in part without the district.

The General Assembly of 1937 found that the opportunity was afforded for levee and drainage districts to secure federal aid, and two acts were passed authorizing them to do so. These are acts 67 and 212 of 1937. Act 83 of the 1939 session of the General Assembly confers upon drainage and levee districts the authority to acquire flowage and storage rights, and other servitudes, upon, over and across any lands in the construction, operation and maintenance of any floodway, reservoir, emergency reservoir, spillway or diversion, and confers the authority to acquire such rights by compromise, settlement, or other agreement with the owner or owners, or by condemnation proceedings. The affect of this legislation is to confer authority upon such districts to make contracts such as the one here involved. It cannot, therefore, be said that the contract between District No. 18 and the federal government is beyond the power of the drainage district to make, as authority has been expressly conferred by the acts just referred to.

The drainage district has appealed from so much of the decree of the court below as holds that the district does not have the right to use its surplus tax collections and revenues for the purchase of rights-of-way for the federal control projects without obtaining authority so to do from the county court. As we think the district has that power, that portion of the decree will be reversed.

The landowner, upon a cross-appeal, insists that "It is *ultra vires* the district to expend its revenues for the federal enlargement or reconstruction of the improvements of District No. 17 of Mississippi county, namely, the Right-Hand Chute floodway levee and ditch No. 4."

It appears, from what we have said, that District No. 18 is not taking over any part of the improvement constructed and under the jurisdiction of District No. 17,

and the decree holding that the district has the power to construct the Right-Hand Chute floodway levee will be affirmed.