O'KANE v. McLEAN BOTTOM LEVEE & DRAINAGE DISTRICT No. 3.

4-8303                                              203 S. W. 2d 392

REED v. McLEAN BOTTOM LEVEE & DRAINAGE DISTRICT No. 3.

4-8316                                              203 S. W. 2d 392

Opinion delivered June 30, 1947.

*Ray Blair* and *E. B. White* for appellant O'Kane.

*Bruce Shaw, Chas. I. Evans* and *J. M. Smallwood,* for appellant Reed.

*D. P. McKenzie, Reece Caudle* and *Robt. J. White,* for appellee in both cases.

HOLT, J. These three causes, numbered 8303, 8304 and 8316, have been consolidated here, and this appeal in No. 8303 and No. 8316 comes from a judgment of the Logan Circuit Court, Northern District, finding and declaring that the McLean Bottom Levee & Drainage District No. 3, Logan County, Arkansas, created by order of the Logan County Court May 7, 1947, was in all things a valid district. (Section 4455, *et seq.,* Pope's Digest, including all amendments thereto, and specifically Act 279 of the Acts of 1909 and Act 177 of the Acts of 1945.)

The record reflects that on February 3, 1947, a petition, signed by eight property owners, for the creation of the above district was duly filed in the Logan County Court, alleging the purposes to be the construction of a canal, ditches and levees therein. An attempt was made to describe the property included therein, engineers were appointed, their bond filed, their report made, and on March 6, 1947, after due notice of the filing of the petition and the proposed boundaries of the district, upon a hearing the County Court entered an order creating said District No. 3.

Thereafter, on April 2, 1947, during the same term of County Court at which the March 6th order, *supra,*

was made, a second order was entered by the County Court for the primary purpose, it appears, to correct erroneous descriptions of the lands sought to be embraced in the district by the March 6th order, and 20 days were allowed for an appeal to the Circuit Court from this April 2nd order.

Appellants, Reed, Shaw and Mitchell, appealed from this order to the Circuit Court on April 19, 1947.

Prior to this appeal to the Circuit Court from the April 2nd order appellees filed in the County Court of Logan county their second petition praying for the creation of the above district embracing approximately 15,000 acres of land, incorrectly described, in the two orders of March 6th and April 2nd, *supra*, but under descriptions alleged to be correct descriptions of all lands embraced within the proposed district.

The County Court, on May 7, 1947, upon a hearing on this last petition, made and entered its third order creating the district, *supra*, McLean Bottom Levee and Drainage District No. 3.

From this latter order of the County Court, appellants appealed to the Circuit Court of the Northern District of Logan County, and upon a hearing the Circuit Court, as indicated, found said district valid and properly formed, and the appeal here is from this order.

## No. 8303

We consider first, Case No. 8303 of W. S. O'Kane, who was the appellant and a land owner in the district. His contentions are: (1) That the lands embraced within the proposed district are not properly and definitely described. (2) That the persons selected as engineers to make proper survey of the lands involved in the district were incompetent and incapable of performing the duties assigned. (3) That the County Court order establishing the district in question was arbitrarily made without any proof as "to the need, value, or benefits of said improvement." (4) "Did the County Court have the right to make an order creating the second McLean Bot-

tom Levee & Drainage District No. 3 on the 7th day
of May, 1947, said district to embrace the identical lands,
to serve the same purpose, and to proceed under the
same identical plan, as the first McLean Bottom Levee
& Drainage District No. 3, established under its order
of April 2, 1947, and in the same order creating said
second district under date of May 7, 1947, did the County
Court have jurisdiction and the right to cancel and void
its order of April 2, 1947, establishing the first district,
with an appeal then pending in the Circuit Court of
Logan county, Arkansas, Northern District, from its
order of April 2, 1947, creating said first McLean Bottom
Levee & Drainage District No. 3?''

We proceed to consider first appellant's fourth, and
what appears to be the primary contention of all appel-
lants.

It is undisputed that when the County Court entered
its third order on May 7, 1947, an appeal from the second
order, April 2, 1947, had previously been properly filed
in the Circuit Court, on April 19th, and was pending at
the time the third order was made by the County Court
on May 7th, and principally on the authority of *Taylor*
v. *Bay St. Francis Drainage District,* 171 Ark. 285, 284
S. W. 770, appellants earnestly insist that the County
Court was without authority to enter the order of May
7th creating the district and that all proceedings there-
under were void. We think, however, that the present
case is not controlled by the above case and is distinguish-
able.

In the present case, the court's order of May 7th
was made on a new petition filed April 15, 1947, prior
to the appeal on April 19th from the April 2nd order
and on its May 7th order, the County Court ordered:
''That all petitions, orders, bonds, reports and other
matters incident to the formation of McLean Bottom
Levee & Drainage District No. 3, Logan County, Ark-
ansas; filed since January 1, 1947, be withdrawn and
cancelled of record as of the 12th day of April, 1947,''
and as we shall presently point out, the first two orders

of the County Court, the one of March 6th and the other of April 2nd, were made on the first petition filed prior to February 3, 1947, and which petition failed to describe and locate any lands sought to be embraced in the district. The descriptions describe nothing. The Court, therefore, had no jurisdiction over the *res*.

In the present case, the orders stem from two different petitions. The first two orders, as indicated, on the first petition which failed to describe the land, and the order of May 7th from the second and a new petition filed April 15th, 1947, *supra,* which petition, as we shall point out, correctly described the lands embraced in the district and therefore the County Court acquired jurisdiction, having cleared the field for entirely new proceedings in the formation of the district. In the Taylor case, it appears that both proceedings there sprang from the same original petition and the first order there made was void because the *order* misdescribed the land. Apparently the *petition* upon which the order was based did correctly describe the land and the second order was based on the same petition. Since the petition correctly described the land, jurisdiction of the case was conferred on the County Court. In the present case, the appeal being taken in another and different proceeding on a new petition did not oust jurisdiction of the County Court in the second proceeding, which resulted in the May 7th order. Since the first petition, as indicated, on which the first two orders, *supra,* were based, described nothing, we have no way of knowing that the two proceedings were for the same purpose or that the first proceeding preempted jurisdiction. See, also, *Smith* v. *Lawrence,* 175 Ark. 712, 300 S. W. 386.

The order of March 6th as above noted describes nothing. On its face it wholly fails to describe the property to be included in the district or to set forth the boundaries of the district. The purported description of the boundaries of the district attempted to be created in that order reads: ''Beginning at a point which is four hundred fifty (450) feet north of quarter section line between the northeast quarter (NE¼) and the southeast

quarter (SE¼) of section sixteen (16), township eight (8) north; range twenty-six (26) west . . ."

Obviously, there is no such point because such beginning could be anywhere on a line running east and west for one-half mile, and further: "Running thence west four hundred (400) feet between sections sixteen (16) and fifteen (15) for place of beginning; . . ."

It is again obvious that the line between sections 15 and 16 lies north and south and that section 15 lies east of section 16, and further: "Thence south five thousand seven hundred seventy-five (5775) feet along the east boundary line of the new levee . . ."

There is as yet no new levee.

The description continues: "Thence north two thousand three hundred (2300) feet long the west boundary line of the drainage structure . . . Thence in a westerly direction along the south boundary line of the levee."

The drainage structure and levee referred to are still to be located and constructed.

The March 6th order was therefore void and of no effect.

Likewise, the order made April 2, 1947, on the same petition on which the March 6th order was made was void and of no effect since it failed to describe properly the property to be included in the district.

This description, having set forth the beginning point, 450 feet north of the southeast corner of the northeast quarter of section 16, township 8 north, range 26 west, continues west and south to the high water mark of Six Mile Creek, and continues with the high water mark for a distance and then uses this language: "Thence north along the landside toe of the proposed levee 2,300 feet; thence in a westerly direction along the landside of the proposed levee for a distance of 40,000 feet to point of beginning."

We think it obvious that this description is defective since the "proposed levee" was not in existence and it

fails to locate definitely the lands within the district where the improvements were contemplated. We hold, therefore, that appellants' fourth contention cannot be sustained.

We think appellants' first contention, *supra,* untenable for the reason that the description of the lands within the proposed district appearing in the petition for the formation of the district, the engineers' report with the vicinity map of the district attached, and the order of May 7th appear to be complete descriptions by metes and bounds, beginning at a point certain and terminating at the same point. All descriptions appear to be the same, and were sufficient.

"Where a deed described the lands conveyed by metes and bounds, and other description that can be made certain by evidence *aliunde,* it is sufficient." *Cooper* v. *White,* 30 Ark. 513, (headnote); *Dorr* v. *School District No. 26,* 40 Ark. 237.

Appellants' second contention was that the engineers, Walters and Dunn, were incompetent. This was a question to be determined by the trial court, was one of discretion, and since we find no evidence that he abused this discretion or that these men were not fully competent, the contention is without merit.

As to appellants' third assignment that the order establishing the district was hastily and arbitrarily made, we find nothing to support this contention. This was also a matter within the trial court's discretion, and in the circumstances here, we think the matter had been thoroughly developed in the proceedings both in the County Court and the Circuit Court, and that the action of the court was warranted.

"On appeal from a judgment establishing a drainage district it was within the trial court's discretion, after the matter had been thoroughly developed, to refuse to hear further testimony." *Jacks Bayou Drainage District* v. *St. Louis Iron Mountain & Southern Railway Company,* 116 Ark. 30, 171 S. W. 867, (Headnote 3).

No. 8316

Appellants, Reed, Shaw and Mitchell, in addition to the contentions of appellant, O'Kane, *supra*, say: (1) "No statutory authority to construct channel outside the boundaries of the district to divert waters falling outside of the district before the same has reached the district." (2) "Notice published and used as a basis for order May 7, 1947, contains description which is unintelligible and does not furnish notice contemplated by statute to be furnished to property-owners in proposed District." (3) "John M. Willems, A. O. Featherston, and Orlando Hixson have not qualified to act as Commissioners."

(1)

In the present case the "plan" reported by the engineers for the district was: "A drainage canal which will divert the flow of Six Mile Creek along the western boundaries of the district should be constructed for a distance of about 7,500 feet, of an average width of 80 feet at the top, 14 feet at the bottom, and an average depth of 22 feet, with slope of one foot on one and a half feet, and a levee should be constructed almost parallel with the drainage canal a distance of approximately 5,700 feet, and a levee should be constructed for a distance of 47,980 feet along the northern boundary line of the proposed district approximately parallel with the meanderings of the Arkansas River to a point at the lower end of the proposed district where Six Mile Creek now empties into the Arkansas River."

Act 83 of 1939 granted to levee and drainage districts the power to "acquire flowage and storage rights, and other servitudes, upon, over and across any lands in the construction, operation and maintenance of any floodway, reservoir, emergency reservoir, spillway or diversion," and further provides the procedure by which such districts could acquire "flowage and storage rights, and other rights of servitudes over, upon and across any lands embraced in any floodway, reservoir, emergency reservoir, spillway or diversion."

946

As a part of the plan for the control of the Mississippi River, the Arkansas River and other tributaries, Congress, in 1936, enacted the original Overton Flood Control Bill, 33 U. S. C. A., paragraph 701a, and with amendments thereto, declared the policy of the federal government to lend levee and drainage districts financial aid such as proposed here.

In construing such federal and state legislation, this Court had a similar question to that presented here before it in the case of *Drainage District No. 18, Craighead County* v. *Cornish,* 198 Ark. 857, 131 S. W. 2d 938, and there we held: (Headnote 1) "Under § 32 of Act 279 of 1909 as amended by § 5, Acts of 1913, p. 738 (Pope's Dig., § 4489), a drainage district may construct a levee where necessary to prevent the overflowing and filling up of its ditches; and although a portion of the proposed levee lies outside the drainage district, it is not ultra *vires* the district to construct the levee nor to acquire the right-of-way therefor," and (Headnote 4) "A drainage district may, under Pope's Dig., § 4480, condemn lands for a right-of-way for a levee lying in part without the district when such levee is necessary to protect the drainage system."

We conclude, therefore, that this contention is untenable.

(2)

Appellants' second contention, *supra,* that the public notice used as a basis for the order of May 7, 1947, contains insufficient descriptions of the land involved, is, we think, untenable. The notice itself contains, among other things, this language: "In the matter of the formation of McLean Bottom Levee & Drainage District No. 3, Logan County, Arkansas. Notice of hearing to establish McLean Bottom Levee & Drainage District No. 3, Logan County, Arkansas."

It further provides that: "Beginning at a point 500 feet west and 3,300 feet north of the southwest corner of section 15, township 8 north, range 26 west." From

that point the boundaries of the district are set out in detail, as to direction, distance, degrees and minutes, specifically encircling the area comprising the district, and "to the point of beginning."

The description in this published notice is not at variance with the report of the enigneers, the survey which they made, the order of the County Court and that of the Circuit Court on appeal establishing the district and its boundaries. Also in the engineers' report appears this statement: "A plat showing the area to be protected, and the location of the canal project and levee structure is attached."

In *Voss* v. *Reyburn,* 104 Ark. 298, 148 S. W. 510, we said: "The object of designating the boundaries of the district was to enable the property owners included therein and affected thereby to easily ascertain what property was included in the district," and in *Mahan* v. *Wilson,* 169 Ark. 117, 273 S. W. 383, it was said: "Indulging the presumption that the lawmakers intended to require a description of the property in the notice, it necessarily follows that description should be in accordance with the report of the engineers in the case of an original district, or with the report of the commissioners in the case of the creation of a subdistrict, for the report is the thing which forms the basis of the court's action in determining whether or not the district or subdistrict should be created. Crawford & Moses' Digest, § 3650.

"Counsel fail to satisfactorily make it appear to us from the record that there is a variance between the description in the notice and that contained in the report of the commissioners. They refer to a map in the record, but the map to which they refer has not been made a part of the report, but was merely introduced in evidence, and we do not discover any discrepancy between the description in the notice and that in the map filed with the report. These maps were before the trial court who examined them and heard the evidence with reference thereto, and we do not feel at liberty to disturb the finding of the trial court that there is no discrepancy in the

notice and the report. We must indulge the presumption that the court found that there was no such discrepancy."

We think, therefore, that the notice was sufficient to warrant the action of the court in creating the district.

(3)

Finally, appellants argue that the three commissioners, John M. Willems, A. O. Featherston and Orlando Hixson, have not qualified as required by § 4458 of Pope's Digest and § 20, Art. 19 of the Constitution of Arkansas. We cannot agree with this contention. The three original and identical oaths in question are before us. They were each signed by the respective commissioners and each oath was administered by the County Clerk, T. C. Wingfield, on the 7th day of May, 1947. The oath of A. O. Featherston is as follows:

"In the County Court of Logan County, Arkansas, Northern District, in the matter of the formation of McLean Bottom Levee & Drainage District No. 3, Logan County, Arkansas.

Oath of Office.

"I, A. O. Featherston, do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of Arkansas, and that I will faithfully perform and discharge the duties of the office of member of the Board of Commissioners of McLean Bottom Levee & Drainage District No. 3 of the Northern District of Logan County, Arkansas, on which I am about to enter; that I will not directly or indirectly be interested in any contract made by said Board; and that I will well and truly assess all benefits resulting from said improvement and all damages caused thereby. (Signed) A. O. Featherston.

"Subscribed and sworn to before me, County Clerk, in and for the County of Logan, State of Arkansas, this 7th day of May, 1947. (Signed) T. C. Wingfield. (Seal).

"Filed in my office this 7th day of May, 1947. (Signed) T. C. Wingfield, County Clerk within and for the Northern District of Logan County, Arkansas."

As noted, the other two oaths which were signed by the remaining commissioners respectively are the same. We think there has been a substantial, if not a literal, compliance with the statute and Constitution by these commissoners.

We conclude that No. 8303 and No. 8316 must be, and are, affirmed.

## No. 8304

Disposition of Case No. 8304 is made by a *per curiam* opinion of this date. See *infra*, p. 950.

An immediate mandate is ordered.