**UNITED STATES of America,**
**Plaintiff,**

v.

**635.76 ACRES OF LAND, MORE OR LESS, IN FRANKLIN ET AL. COUNTIES, ARKANSAS, and State of Arkansas, et al., and Unknown Owners, Defendants.**

**Civ. No. 1802.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

July 1, 1970.

Supplemental Opinion Dec. 2, 1970.

Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Ray Blair, Paris, Ark., and James K. Young, Russellville, Ark., for McLean Bottom District, Don A. Smith of Harper, Young & Smith, Fort Smith, Ark., for intervenors.

## OPINION

JOHN E. MILLER, Chief Judge.

This is a controversy between McLean Bottom Levee and Drainage District No. 3, Logan County, Arkansas, and certain landowners who have intervened to determine who should receive the just compensation from the United States for land acquired by the District for a right of way and used for the construction of the levee and subsidiary drainage projects.

On May 7, 1947, the County Court of Logan County, Arkansas, granted the petition of proponents and established the District under the general Statutes of Arkansas. There was an appeal from the order of the County Court to the Circuit Court of the Northern District of Logan County, Arkansas, and upon a hearing the Circuit Court found said District valid and properly formed.

There was an appeal to the Supreme Court of Arkansas from the judgment of the Circuit Court, and on June 30, 1947, the Supreme Court affirmed the judgment of the Circuit Court. On the same appeal the Supreme Court considered two other cases appealed on subsidiary or incidental orders relative to the appointment of appraisers to assess damages, etc. O'Kane v. McLean Bottom Levee and Drainage District No. 3 (1947) 211 Ark. 938, 203 S.W.2d 392.

Subsequent to the affirmance by the Supreme Court of the order creating the District, appraisers were appointed for the purpose of appraising the lands required by the District for the construction of the improvements. Sec. 35–1103, Ark.Stat.Ann. (1962 Repl.), being Section 3 of Act 177, Acts of the General Assembly of Arkansas for the year 1945, provides that the appraisers shall enter upon the land which has been appropriated or is intended to be appropriated and ascertain the fair market value of the same; the damage which the construction of the levee and other improvements will cause by obstructing the natural drainage, etc.; and shall reduce their findings to writing, giving the amount of award per acre for the land appropriated or intended to be appropriated.

The Act of Congress approved December 22, 1944, P.L. 534, 78th Cong., authorized certain local flood protection projects on the Arkansas River, including the McLean Bottom Levee.

On May 11, 1946, the Commissioners of the District, having been advised of the enactment of the above statute, entered into a contract with the Corps of Engineers, as authorized by Ark.Stat. Ann. §§ 21–804 to 21–809 (1968 Repl.), in which the District agreed and pledged:

"* * * that it will truly and faithfully perform and execute the cooperation required by the United States Government as set out by the district engineer, Little Rock, Arkansas, and in accordance with the recommendations of the Chief of Engineers in House Document No. 447, Seventy-eighth Congress, second session, as follows: (a) Provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction; (b) alter and construct any bridges required across water courses; (c) hold and save the United States free from damage due to the construction works, and (d) maintain and operate all the works after com-

pletion in accordance with regulations prescribed by the Secretary of War to include protection of the flood carrying capacity of the channel of the Arkansas River in the locality."

See, Drainage Dist. No. 18, Craighead County v. Cornish (1939) 198 Ark. 857, 131 S.W.2d 938.

The levee was constructed by the Corps of Engineers in accordance with the contract. On September 6, 1949, the Commissioners were advised of the completion of the levee and other improvements, and of the formal transfer of the completed project and of the responsibility of the Levee District for the operation and maintenance of the project beginning on that date.

On January 3, 1949, the Circuit Court heard exceptions of landowners to the report of appraisers heretofore appointed by the Commissioners of the District to assess damages under an order which the court had entered on June 25, 1947, directing the Commissioners, through their agents and representatives, to go upon the lands owned by the defendants to assess damages, if any, in favor of the defendants. The court found that all damages occurring to the defendants by reason of the order of entry in the destruction of crops had been fully adjudged and paid by plaintiff, and further found that the "said levee across the lands of the defendants has been completed, and in the construction of said levee plaintiff has taken and appropriated for perpetual use of said levee and said District" certain lands therein described.

On the same day the court entered another order specifically finding that the levee District had "appropriated certain lands of the defendants [the land now claimed by intervenors] for permanent right-of-way and right of ingress and egress situated in Sections 5, 7 and 8 in Township 8 North, Range 25 West."

"That said levee has been fully completed and said District has now appropriated for permanent use and right of way the following described lands belonging to the defendants, described as follows, [here follows a specific description of the lands]."

The order further provided:

"The court further finds that all damages by reason of the taking and appropriating of said lands have been paid in full by plaintiff, and that plaintiff is entitled to the permanent use and occupancy of said lands so above described.

"IT IS THEREFORE, by the Court considered, ordered and adjudged that the permanent occupancy and use of said above described lands be vested in plaintiff, free of any right, title, interest or claim of the defendants or either of them in and to said lands, and that the plaintiff pay the cost of this proceeding."

On July 24, 1946, P.L. 525, 79th Cong., which authorized the multiple purpose plan on the Arkansas River became effective.

On June 4, 1964, the condemnation action was commenced. Upon the filing of the declaration of taking and the deposit in the registry of the court of estimated just compensation, the court on June 8, 1964, entered an order requiring all persons in possession or control of the property described in the complaint to surrender possession of said property to the extent of the estate being condemned. The Government alleged in its complaint that it was necessary to acquire from the Levee District for this project the fee simple title to Tracts Nos. 2715-1 and 2715-2 with minerals reserved and subordinated and the right to occasionally flood Tract 2715E-1 which extends along the river side of the levee.

On December 4, 1969, the intervenors filed their intervention, in which they alleged that the United States in this proceeding has condemned certain property and has named as defendants, among others, the three Commissioners of the District.

"That neither the Levee District nor the Commissioners are the owners of the described land in said condemnation action which is alleged to belong to Mc-

Lean Bottom Drainage District No. 3, Logan County, Arkansas, and that in fact the property of these applicants for intervention and others is being taken without notice to the true owners of said property."

The concluding paragraph of the intervention is:

"Wherefore, applicants for intervention individually and in their representative capacity for the class, pray that this Court determine the actual ownership of the fee simple title in and to said property sought to be condemned by the United States Government in this case, and thereafter set for hearing the matters relating to just compensation for the individual tracts which constitutes said levee now under condemnation by the Government. Applicants for intervention pray for any and all other relief to which they may be entitled in law or equity."

In the answer of the District to the intervention it is alleged:

"1. McLean Bottom Levee & Drainage District No. 3 admits that on the 25th day of June, 1947, the Logan County Circuit Court, Northern District, entered the Order in Cause No. 1877 attached to the intervention filed herein. McLean Bottom Levee & Drainage District No. 3, however, further states that said Order was a right of entry, and that on the 3rd day of January, 1949, a final judgment was entered by the Circuit Court of Logan County, Arkansas, Northern District, which states:

" 'That the permanent occupancy and use of said above described lands be vested in plaintiff, free of any right, title, interest or claim of the defendants or either of them in and to said lands.' "

■ A complaint or intervention may be dismissed on motion if clearly without any merit. This want of merit may consist in the absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or

in the disclosure of some fact which will necessarily defeat the claim. However, a complaint or intervention should not be dismissed for insufficiency unless it appears to a certainty that intervenor or plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim. 2A Moore's Federal Practice, 2d Ed., p. 2271 et seq. in DeLoach v. Crowley's, Inc. (5 Cir. 1942) 128 F.2d 378, the court at page 380 said:

"A petition may be dismissed on motion if clearly without any merit; and this want of merit may consist in the absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim."

See, also, Fair v. United States (5 Cir. 1956) 234 F.2d 288, 296; Porter v. St. Louis, San Francisco Ry. Co. (5 Cir. 1966) 354 F.2d 840, 843.

It is admitted that the intervenors were the owners in fee simple of the lands acquired by the District for the right of way for the construction of the improvements, and that the District had the right to acquire by condemnation or otherwise the right of way necessary for the construction of the levee and the incidental drainage projects. The intervenors and other landowners were paid by the District for the right of way and also damages to crops, etc., resulting from the taking.

Each check issued by the District to the various landowners for the right of way recited, "In satisfaction of judgment in Circuit Court, Logan County, Arkansas, for purchase of right of way and crop damage in full," with an appropriate description of the land on which the right of way was acquired. "This check constitutes payment in full for all damage of every kind or character sustained to date."

The intervenors now contend that the property of the individuals is being taken in this proceeding by the plaintiff without notice; and that the individual owners of the land upon which the right

of way was obtained should have been made parties to this proceeding and just compensation awarded for their interest in the land acquired for the right of way.

■ The individual landowners were entitled to be made parties in this proceeding for the purpose of ascertaining their interest in the lands taken by the District, and if it were found by the court that they had a compensable interest in the lands taken by this proceeding, they were entitled to a hearing to determine just compensation. The court granted their motion to intervene and the claims of the individual landowners have been considered. In view of the conclusion reached by the court, as hereinafter set forth, the landowners are not entitled to a further hearing.

The state Circuit Court in its final judgment found that all damages sustained by the individual landowners by reason of the taking and appropriating of said lands had been paid in full and that the District was entitled to the permanent use and occupancy of the lands, and concluded the proceeding as follows:

"IT IS THEREFORE, BY THE COURT CONSIDERED, ORDERED AND ADJUDGED that the permanent occupancy and use of said above described lands be vested in plaintiff, free of any right, title, interest or claim of the defendants, or either of them, in and to said lands and that the plaintiff pay the cost of this proceeding."

There is no indication in the record that at the time the Government filed its condemnation suit that there was any likelihood of the abandonment of the right of way or the levee and other improvements. At that time the landowners only owned an estate in fee simple defeasible.

Liability of an owner of an estate in fee simple defeasible to have his interest taken under eminent domain proceedings is identical with that of an owner of an estate in fee simple absolute. Volume 1, Restatement of the Law of Prop-

erty, § 53, p. 187. In Comment b the learned authors state:

"Distribution of award—Occurrence of stated event not imminent. If, viewed from the time of the commencement of an eminent domain proceeding, and not taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding, the event upon which a possessory estate in fee simple defeasible is to end is an event the occurrence of which, within a reasonably short period of time, is not probable, then the damages for a taking thereof by an eminent domain proceeding are ascertained as though the estate were a possessory estate in fee simple absolute and the entire amount thereof is awarded to the owner of the estate in fee simple defeasible. Under these circumstances the future interest has no ascertainable value."

See, also, 2 Nichols on Eminent Domain, § 5.221, p. 51.

In 29A C.J.S. Eminent Domain § 199, p. 888, the rule is stated as follows:

"*Possibility of reverter or right of re-entry.* It is generally held that, although condemnation involves a termination of the use of the property on which the fee is limited and on which a possibility of reverter or right of re-entry would come into play, such taking does not operate to terminate the prior estate and entitle the owner of the possibility of reverter or right of re-entry to the compensation for the taking of the property. Rather, the compensation is to be paid to the owner of the defeasible fee without any allocation or apportionment to the holder of the reversion or right of re-entry on the ground that such interest is so remote and speculative as to be without present value."

This court had before it the same question in United States v. 2,184.81 Acres of Land, etc. (W.D.Ark.1942) 45 F.Supp. 681. In the opinion filed 28 years ago the court cited and relied upon

the Restatement of the Law above referred to, and United States v. 1,119.15 Acres of Land (E.D.Ill.1942) 44 F.Supp. 449, and held that the holder of a bare possibility of reverter does not possess a present vested interest or estate in the land. "The contingency which would give him an interest or estate in the land may not occur."

Under the facts in this case, there is indeed a very slight possibility that the right of way acquired by the District and condemned by the plaintiff in this action will be abandoned or that the uses of the property will be diverted from the uses for which it was obtained by the District.

In Midwestern Developments, Inc., v. City of Tulsa, Oklahoma (10 Cir. 1967) 374 F.2d 683, the court discussed the questions involved herein, and at page 688 said:

" * * * as between servient and easement owners, as in our case the easement owner is entitled to the entire award, both where the condemnor takes an easement * * * and where the condemnor takes the fee * * * ."

See, also, Terminal Coal Co. v. United States (3 Cir. 1949) 172 F.2d 113.

■ The possibility of reverter remaining in the intervenors individually and as representatives of a class of other owners is so remote as to be valueless, and therefore the intervention of the intervenors should be dismissed.

Judgment in accordance herewith is being entered today.

## SUPPLEMENTAL OPINION

On December 4, 1969, the intervenors were permitted to intervene individually and in their representative capacity for all the interested landowners.

In the intervention filed the same date, the intervenors, George Robert Bill Parks, Martin Geels, Anthony Seibenmorgen, and H. L. Hembree, III, alleged that the McLean Bottom Levee and Drainage District No. 3, Logan County, Arkansas, in its condemnation actions in the Logan County Circuit Court sought and received only "the right of possession for the right of entry into, over and on each and every tract of land listed for the purpose of constructing, maintaining and operating the flood projection project of the Levee levees, loops, dikes and drainage channels and any and all things incident thereto, but said order did not grant unto said Levee District any ownership or right of use except as therein provided. That the Levee District and the Commissioners thereof are not the owners of the fee title in and to said lands here under condemnation, and have only rights as given to them by the court in the condemnation in the Logan County action * * *. That these applicants for intervention with others are the true and rightful owners of the real property sought to be condemned by the United States of America in this cause."

In due time the District filed answer to the intervention and alleged that the intervenors "have no right, title, interest or claim in and to said property and that their intervention should be dismissed." Briefs and records were submitted by the parties in support of their respective contentions.

On July 1, 1970, the court considered the briefs, pleadings and all records referred to therein, and notwithstanding the contention of the District that it acquired a fee simple title in the condemnation cases, the court did not determine the specific title which the District acquired by the condemnation proceedings in the state court, but merely held that the possibility of reverter remaining in the intervenors individually and as representatives of a class is so remote as to be valueless, and dismissed the intervention.

On July 13, 1970, following the entry of the judgment, the intervenors filed a motion requesting the court to "hold a hearing after notice to all parties to discuss the ultimate effect of its opinion as now rendered and grant to intervenors and all parties of interest the right of submitting oral testimony, documentary

evidence and other matters before a final determination is made to dismiss the intervention."

On July 22, 1970, the court fixed August 13 as the date for the hearing on the motion. All parties appeared by counsel, and at the request of the intervenors the hearing was continued to give them more time to prepare for the hearing. After many postponements the final hearing was held on November 25, 1970.

At the hearing, three of the intervenors, George Robert Bill Parks, Martin Geels, and H. L. Hembree testified. It is the contention of the intervenors that the interest acquired by the District in the lands condemned by it for the construction of the improvements by the Government was only a right of way for levee purposes; that over a period of years the adjoining landowners have been permitted to cut grass and hay from the right of way and to use the land for pasture; and that since the actual levee and other improvements did not utilize all of the land acquired by the District, their interest in that land should be ascertained and compensation awarded them; that the taking by the Government negates the intent and purposes for which the land was taken by the Levee District, and that the court should determine whether or not said lands taken by the Government are in fact being used by the Levee District and whether the Government's intended use by virtue of the condemnation by it will eliminate the use of the lands as a levee, and any and all other related matters.

Upon reconsideration of the order of July 1, 1970, the court has concluded that the District acquired the fee simple title by its condemnation of these lands, in accordance with the terms of the contract entered into between the District and the Government.

The applicable statute under which the fee simple title to these lands was acquired by the District is Act 177 of the General Assembly of the State of Arkansas for the year 1945, and appears in Ark.Stat.Ann. (1962 Repl.) §§ 35–1101, 1102, 1103.

Following the ascertainment of the fair market value of each owner's land and the payment by the District to the owner of said fair market value and all damages allowable under the law, the state court entered the order of August 3, 1949, referred to and set forth in the original opinion: "that the permanent occupancy and use of said above described lands be vested in plaintiff, free of any right, title, interest or claim of the defendants or either of them, in and to said lands and that the plaintiff pay the costs of this proceeding."

The intervenors do not attack the procedure that was followed by the District in obtaining the title to the lands to be delivered to the Government under the terms of the contract. Indeed, the procedure followed by the District in the condemnation proceedings in the state court was approved by the Supreme Court of Arkansas in the case of O'Kane v. McLean Bottom Levee and Drainage District No. 3 (1947) 211 Ark. 938, 203 S.W.2d 392. The sum and substance of their contentions are that notwithstanding the condemnation proceedings, they still have a compensable interest in the land that was formerly owned by them and which was acquired by the District in the condemnation proceedings.

The statute giving a levee and drainage district the power of condemnation does not specifically define the extent of the interest that may be so obtained. The interest taken depends upon the construction of the statute authorizing the taking and the extent of the title or rights which may be adjudged under the pleadings in the particular proceeding. If the statute expressly or by necessary implication declares that a fee shall be taken, the condemnor will acquire the fee specified. 26 Am.Jur.2d, § 132, Eminent Domain, p. 791.

In 3 Nichols on Eminent Domain, 3d Ed., § 9.2[4], p. 278, the rule of construction is stated as follows:

"In the absence of express or precise provisions, the intention of the

act and the construction to be put upon its terms may be gathered from its general scope and tenor, and the nature of the public use for which the condemnation is authorized. If the legislative intention to vest the fee is thus made clear, and this intention is consistent with the language employed, effect will be given to the intention. This is especially true where a remaining private ownership is inconsistent with the use for which the land is taken, and where the purposes of the condemnation will not be satisfied by the taking of a lesser estate or easement."

The levee and drainage structures were erected by the Government under contract with the District as set forth in the original opinion. Certainly, remaining private ownerships in the lands acquired for the construction of the improvements are inconsistent with the use for which the land was taken and the purpose of the condemnation would not be satisfied by the taking of a lessor estate or easement.

In Carroll v. Newark (1932) 108 N.J. L. 323, 158 A. 458, at page 460, 79 A.L.R. 509, the court, beginning at page 512 of 79 A.L.R., said:

"The next question is, What quantity of interest did the statute which conferred the power of eminent domain authorize the city to acquire? The statute is to be read, not under the necessity of finding fixed phraseology, but to ascertain its intent, because this intent, clearly found, will prevail. No precise words are necessary in a statute to authorize the condemnation of a fee. As was said by Mr. Justice Holmes, then a justice of the Supreme Judicial Court of Massachusetts, in City of Newton v. Perry, 163 Mass. 319, 39 N.E. 1032. 'There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee.' See, also, Driscoll v. City of New Haven, 75 Conn. 92, 52 A. 618.

"The statute, from its title throughout, anticipates the exercise of complete control over the lands by the city. The city is authorized to erect suitable buildings without limitation as to character or extent, except that they shall be suitable to their purpose. The revenues from all such lands and buildings are to be devoted exclusively to the payment of accruing interest on, or toward the redemption of, the bonds issued by the city to finance the enterprise. Thus, dominion over the land and its increment is in, or for the advantage of, the city. The land is not for the indiscriminate use of all the inhabitants of the city, as for instance is a highway, or as is even a park, but is for such selective use as must maintain when market space is to be let and revenues therefrom collected.

"The commissioners in condemnation are required by the statute to determine the fair value of the 'lands and real estate' to be taken, and if their award be appealed from the trial by jury shall be to assess 'the value of the said property'—provisions not inconsistent with the taking of an estate of inheritance.

"Significance must attach to the statutory expression 'the title to and the right of possession of such property shall immediately become vested in such city.' It is 'the title' of which the statute speaks, and that is a phrase which by common acceptance, as well as in the books, means full title. Bouv. Law Dict., vol. 3, page 3281, defined 'title,' as applied to lands, to be 'the means whereby the owner of lands hath the just possession of his property.' Webster's New International Dictionary gives the primary definition of the word in its law use thus: 'The union of all the elements which constitute ownership, at common law divided into possession, right of possession and right of property, the last two now, however, being considered essentially the same.' Likewise 'vest' is a word of substantial import

and is thus defined by Bouv. Law Dict., vol. 3, page 3397: 'To give an immediate fixed right of present or future enjoyment. An estate is vested in possession when there exists a right of present enjoyment; and an estate is vested in interest when there is a present fixed right of future enjoyment.' "

In Board of Directors, St. Francis Levee District v. Morledge (1960) 231 Ark. 815, 332 S.W.2d 822, the court at page 826 of 231 Ark., at page 829 of 332 S.W.2d, referring to constitutional protection afforded a landowner, said:

"When the State, or any of its subdivisions, or any public utility, exercises the power of eminent domain, then the owner of private property so taken, appropriated, or damaged for the public use, must receive just compensation therefor."

At page 831 of 231 Ark., at page 831 of 332 S.W.2d the court approved the following statement from Little Rock & Ft. Smith Ry. Co. v. Greer (1906) 77 Ark. 387, 96 S.W. 129, where the court in rehearing said at page 396 of 77 Ark., 96 S.W. 129:

" 'The principle is made clear in the original opinion that where a railroad corporation lawfully acquires a right of way over land, either by grant, prescription or condemnation, such acquisition covers all damages, present and prospective, resulting to the owner whose land is invaded. This is upon the theory that full compensation is allowed at the time and can be recovered only once.' "

In 27 Am.Jur.2d, § 450, p. 366, it is stated:

"As a general thing, all losses resulting from a taking in eminent domain are assessed in one proceeding [citing Morledge, supra]. So, damages to private property by public improvement, when assessed, are ordinarily assessed once for all, and include all damages sustained by the owner, present or future, by reason of a proper use and maintenance of the public improvement. The damages recovered generally cover all future uses of the condemned property that are or should be within the contemplation of the parties at the time of the taking, irrespective of the extent of the present needs. Where the fee is taken, the appraised value represents the whole fee and the interest, both present and prospective, of every person concerned in the property. The inconveniences to which the owner of land is subjected during the pendency of condemnation proceedings are presumed to be considered and allowed for in fixing the amount of the compensation."

In the original opinion the court referred to the Act of Congress, approved Dec. 22, 1944, P.L. 534, 77 Cong., which authorized certain local flood protection projects on the Arkansas River, including the McLean Bottom Levee and Drainage District, and the action taken by the Commissioners of the District, and as a result the levee and drainage structures were constructed at the cost of the United States Government and the only expense incurred by the District was the expense of obtaining the right of way which was obtained by the various condemnation suits filed by the District against the then landowners. All damages of every kind and character, including the fair market value of the land at the time, were paid by the District under and by virtue of the judgments rendered in the state court.

It was admitted by the intervenors that the only land in which they are claiming an interest and which the Government has condemned was obtained by the Levee District in the condemnation proceedings in the state court, and that they were paid by the District the fair market value of the land at the time it was condemned in the state court, as well as all other claims for damages as provided in § 35–1103, supra. One of the intervenors, Mr. Parks, did not own the land now claimed by him at the time of the condemnation in the state court, but his grantors, Howard Simmons and

wife, Charlene Simmons, were parties and were paid several thousand dollars, the market value of the land condemned by the District. In 1962 Parks purchased the Simmons land and contends that the land now claimed by him was deeded to him by Simmons, but even though Simmons may have included the land in the deed to Parks, Simmons did not own the land involved herein at the time Parks purchased it.

Each and every contention made by the intervenors in their behalf and in behalf of other affected landowners has been fully considered and found to be without merit.

█ In view of the motion of intervenors and their contentions, the court feels that in order that the question of title be permanently disposed of, an order should be entered finding and declaring that the McLean Bottom Levee and Drainage District No. 3 acquired the fee simple title by reason of the condemnation proceedings in the state court, and that the intervenors have no compensable interest in any of the land and so acquired by the District by its condemnation proceedings.

Judgment in accordance with the above is being entered today.